27 U.S. 442
 2 Pet. 442
 7 L.Ed. 479
 SOLOMON SOUTHWICK, SPENCER STAFFORD, AND JOHN VAN NESS
GATES, PLAINTIFFS IN ERROR
v.
THE POSTMASTER GENERAL OF THE UNITED STATES.
 January Term, 1829
 
 WRIT of error to the circuit court of the southern district of New York.
 This suit was commenced, originally, by the postmaster general, in the district court of the northern district of New York, in May 1822, against Solomon Southwick and his co-defendants, who were his sureties; to recover six thousand dollars, the penalty of a bond given by them for the faithful discharge of his duties as postmaster of the city of Albany. In 1824, judgment was rendered in favour of the postmaster general, and a writ of error was thereupon brought, and the record certified to the circuit court of the southern district of New York. The judges of the circuit court divided in opinion upon several points which arose in the case, and the same were certified to this Court; where they were considered and decided at January term 1827. The decision of this Court having been certified to the circuit court, the judgment of the district court was affirmed by the circuit, in May term 1828.
 Upon this judgment this writ of error was prosecuted, and now Mr Wirt, the attorney general of the United States, moved to dismiss the same.
 He contended that the phrase in the act of congress, passed April 29, 1812, 1 Sess. 12 Congress, ch. 71, 'sitting as a circuit court,' is confined to such causes as are exclusively of circuit court jurisdiction; and does not embrace causes of which district courts as such, and circuit courts as such, have a concurrent jurisdiction.
 He argued, that this is the correct construction of the act of congress, and is consistent with the judicial system; because, in no case has a writ of error been given to reverse the judgment of a circuit court, in a cause brought up from a district court; provided such cause was within the ordinary jurisdiction of a district court. In such cases, the judgment of the circuit court has been uniformly final and conclusive. If the act in question has introduced a different rule, in reference to causes decided in the northern district court of New York, it is an anomaly in our judicial legislation.
 The district courts have jurisdiction of post office bonds. 12 Wheaton, 136. Dox et al vs. The Postmaster General, 1 Peters, 318.
 He submitted that the act of 1826 does not reach cases within the ordinary jurisdiction of the district courts. If it be otherwise, it must be shown that, in fact, the district court sat as a circuit court; and this cannot be established in the case before the Court.
 He inquired if the judgment of the district court in this cause, could have been removed directly to the supreme court, under the act of 1826? Certainly not.
 The act creating the northern district court, was designed to extend to that district the benefit of a circuit court jurisdiction; not to confer circuit court powers, concurrent with those which it possessed in its appropriate character. It would have been idle and useless to have intended otherwise, and therefore cannot be presumed.
 Mr Taylor, for the plaintiffs in error, in opposition to the motion, urged, that the appropriate, original jurisdiction of the district court, in its general features, relates to admiralty and maritime causes, to seizures under the revenue laws, to petty offences, and to civil suits when the United States is plaintiff, and the sum in controversy does not exceed five hundred dollars. It is the inferior court of the United States.
 The appropriate original civil jurisdiction of the circuit court, extends to all civil suits where the United States is plaintiff, and the matter in controversy exceeds five hundred dollars; or when an alien is a party; or the suit is between a citizen of the state where the action is brought, and a citizen of another state.
 The district court may, indeed, exercise jurisdiction of civil causes in behalf of the United States, where the matter in controversy exceeds five hundred dollars, but in all such cases the jurisdiction of the district and circuit courts is concurrent. It is to be presumed that the court sits in its superior character, whenever the matter in controversy will authorise this to be done.
 This presumption is strengthened by the consideration, that the parties have a right in the one case to have the proceedings reversed, and the errors which may happen corrected by this Court, which is of common right; and which is denied to them upon the principles claimed for the postmaster general.
 The propriety of a liberal construction of the act of congress, for the purposes of allowing a review of the district court for the northern district, will be apparent, when the history of that court for several years subsequent to 1811, shall be considered.
 In 1812, the judge of the New York district court became incapable of discharging the duties of his office. Hence the act of April 29, 1812, which authorised the appointment of an additional judge of the district court, for the district of New York. The act of April 9, 1814, 2 Session of 13th Congress, ch. 108, divided the original New York district into two districts, and assigned a district judge to each.
 It provides 'that the district court in the said northern district of New York, shall, besides the ordinary jurisdiction of a district court, have jurisdiction of all causes except of appeals and writs of error, cognizable by law in a circuit court;' and writs of error shall lie from decisions thereon, to the circuit court of the southern district of New York, in the same manner as from other district courts, to their respective circuit courts.
 Writs of error would lie equally in all cases, whether the court was exercising its ordinary or extraordinary jurisdiction.
 In the northern district, until the act of the 3d of March 1815, there was but one attorney general, and the marshal was appointed and commissioned for both courts, until the act of March 3d, 1825.
 Mr Taylor considered that the act of the 3d of March 1817, revived and continued the suits and proceedings which had been discontinued in the northern district of New York, and that it authorised the judges of the southern district to hold the courts therein, either singly or jointly, with the judge of the northern district.
 Under this act the same difficulties arose in conducting the business of the northern district, which had been formerly experienced in the southern district. To remedy these evils, at the first session of the 15th congress, the act of April 3d, 1818 was passed. That act required the judge of the northern district to hold his courts, unless he gave timely notice of his inability to the judge of the southern district; in which case the latter was required to act as his substitute. Suits and proceedings were again revived; actions commenced in the former district of New York were transferred; and actions thereafter to be commenced were limited to the district where they might or did arise; and the original jurisdiction of the circuit court of the southern district was confined to actions arising there.
 No further legislation took place relative to these courts until the 22d of May 1826, when the act was passed allowing appearls and writs of error to this Court, from decisions of the northern district court, 'when exercising the power of a circuit court;' and from decisions thereafter to be made by the circuit court for the southern district, in causes removed to the circuit court from the district court of the northern district 'sitting as a circuit court.'
 At the time the former writ of error was brought to remove this cause from the northern district court to the circuit court of the southern district, it was not legal to prosecute it to this Court. Similar causes may now be removed, and here reviewed. This, he argued, furnished a reason for the second clause of the act of 1826.
 These acts afford an answer to the inquiry whether the northern district court, in deciding this cause, 'was sitting as a circuit court.' The expression in the act of 1814, is 'causes cognizable by law in a circuit court,' and in that of May 1826, it is, 'when exercising the powers of a circuit court.'
 Was not this cause cognizable by law in a circuit court? Would not such a court in entertaining jurisdiction over it, be in the exercise of its appropriate powers? If so, the district court was 'sitting as a circuit court.'
 The parties were proper for the circuit court; the nature of the action was one involving a large sum, and questions were presented of deep interest, both as to their responsibility as sureties, and the character of the principal in the bond. The allegations made by the defendants were supported by the finding of the jury, and they went to show that the sureties were exonerated, and in judgment of law were discharged from the bond. The doubts and difficulties of the case were manifested by the division of opinion of the judges of the southern circuit court. These matters are sufficient to give the district court of the northern district jurisdiction as a circuit court. The act of 1826 allows writs of error from the district court only 'when exercising the powers of a circuit court,' and this is done on the presumption that these powers were exercised on subjects proper for them.
 He further contended, that the act of 1826 was a remedial statute, and was entitled to be viewed most favourably to parties, to whom it was intended to give relief. If its provisions do not embrace this case, it will stand almost wholly inoperative on the statute book.
 Had the circuit court, when the case was first before it, decided that the facts found by the jury discharged the parties to the bond, the United States would, by their law officer, have considered it altogether reasonable, that the opinion should have been reviewed by this Court. The plaintiffs in error claim no more than the application of the same just principle to their case.
 Mr Chief Justice MARSHALL delivered the opinion of the Court.
 
 
 1
 This is a motion to dismiss a writ of error to a judgment rendered in the court of the United States, for the seventh circuit and southern district of New York in favour of the post master general. The foundation of the motion is, that this Court has no jurisdiction of the cause.
 
 
 2
 The original judgment was rendered in the court for the northern district of New York, on which congress had conferred jurisdiction as a circuit court also. That judgment was removed into the circuit court sitting in the southern district by writ of error, and was affirmed in that court.
 
 
 3
 In May 1826, congress enacted 'that appeals and writs of error shall lie from decisions in the district court for the northern district of New York, when exercising the powers of a circuit court; and from decisions which may be made by the circuit court for the southern district of said state, in causes heretofore removed to said circuit court from the said district court sitting as a circuit court, to the Supreme Court of theUnited States, in the same manner as from circuit courts.'
 
 
 4
 The doubt respecting the jurisdiction of the Court is produced by this act.
 
 
 5
 By the judicial act the district courts have cognizance concurrent with the circuit court of all cases where the United States sue. By the act of the 3d of March 1815, Vol. IV. p. 855, it is enacted that the district courts of the United States shall have cognizance, concurrent, &c. of all suits at common law where the United States or any officer thereof under the authority of any act of congress, shall sue, &c. This act gave the district court jurisdiction of all suits brought by the postmaster general. It has been construed by this Court to give the circuit courts cognizance of the same causes.
 
 
 6
 The district courts which exercise circuit court jurisdiction, do not distinguish in their proceedings whether they sit as a circuit or a district court. That is determined by the subject matter of their judgments. Their records are all kept as the records of a district court. If the court for the northern district of New York sat as a circuit court when the original judgment was rendered against the plaintiff in error, this Court can take jurisdiction of the judgment affirming it, which was rendered in the circuit court; if the original judgment was rendered by a district court, no writ of error lies to the judgment of affirmance pronounced in the circuit court.
 
 
 7
 Had the court for the northern district of New York possessed no circuit court powers, it could still have taken cognizance of this cause. By conferring on it the powers of a circuit court, congress has added nothing to its jurisdiction in this case. In taking cognizance of it, a district court has exercised the ordinary jurisdiction assigned to that class of courts. No extraordinary powers were brought into operation. We cannot say that a district court, performing the appropriate duty of a district court, is sitting as a circuit court, because it possesses the powers of a circuit court also.
 
 
 8
 The writ of error must be dismissed, this Court having no jurisdiction in the case.
 
 
 9
 This cause came on to be heard on the transcript of the record from the circuit court of the United States for the southern district of New York, and on the motion of the attorney general made in this cause at a prior day of this terms, to wit, February 7th, 1829, to dismiss this cause for want of jurisdiction, and was argued by counsel; on consideration whereof, it is considered, ordered and adjudged by this Court, that the writ of error in this cause be and the same is hereby dismissed for want of jurisdiction.