LIZZIE T. REID *et al.*

*v.*

THOMAS C. MORTON.

*Filed at Springfield January 22, 1886.*

1. CONSTITUTIONAL LAW—*of an act being void in part, and valid as to the residue—jurisdiction of local inferior courts.* An act of the legislature may be unconstitutional and void in part, and good as to the residue. Therefore, an act creating an inferior court in a city, and giving jurisdiction within the city, and also in the township without the city, will be valid in conferring jurisdiction within the city, whatever may be considered as to the validity of that portion of the act purporting to extend the jurisdiction outside the city limits.

2. SAME—*as to what "jurisdiction" might be given to "inferior local courts" in cities, under the constitution of 1848—sale of ward's land by guardian.* The word "jurisdiction," in the constitution of 1848, in relation to city courts, relates to the exercise of such powers, only, as are judicial in their nature, and the power to authorize a guardian to sell his ward's land is

not a power of that nature, but rather ministerial. Therefore the legislature was authorized, under that constitution, to confer on city courts the power to order a guardian's sale of a ward's real estate situated without the cities in which the courts were established, when the ward resided therein.

3. SAME—*creating "inferior local courts in cities"—City Court of Alton, as coming within that description.* In 1859, the City Court of Alton was created by a special act, with a grant of jurisdiction concurrent with the circuit court in all civil and criminal cases, except cases of treason and murder, and the judge thereof was declared to possess the same powers as judges of the circuit courts, except as limited in the act, and it was made a court of record: *Held,* that the city court was an "inferior court," within the meaning of those words in the constitution of 1848. The mere fact of that court being made a court of record, did not affect its character as being an "inferior" court.

4. SAME—*validity of act of 1857, giving an uniform organization to inferior local courts in cities.* The act of February 10, 1857, entitled "An act to give an uniform organization and jurisdiction to inferior courts of local jurisdiction in cities of this State," is not void for uncertainty, repugnancy and inconsistency, under the constitution of 1848, for the reason it confers upon any city court created, the same jurisdiction possessed by two other city courts whose jurisdictions are different as to criminal cases and as to the amount involved in civil cases. The difference in the jurisdiction of the two courts may give rise to doubt, and call for construction as to the precise extent of jurisdiction in the cases named, but does not go to the validity of the act itself.

5. JURISDICTION *of Alton City Court—as to application by guardian to sell ward's land.* The City Court of Alton, within the city, was, by the act creating it, invested with concurrent jurisdiction with the circuit court, not only in all civil cases, but also with the same powers possessed by the latter court, including the statutory power to order a sale of a ward's land by his guardian.

6. GUARDIAN'S SALE OF WARD'S LAND—*of facts giving a court jurisdiction.* Under section 10, chapter 47, of the Revised Statutes of 1845, a guardian's petition for leave to sell his wards' land, filed in the Alton City Court, in 1865, showing the requisite facts, and that the wards were residents of that city, and the publication of notice to all interested, of the application, was held sufficient to give the court jurisdiction to order the sale of the wards' lands, though situated without the city, and in different counties.

7. SAME—*of the signing of the petition.* A petition of a guardian for leave to sell her wards' land, filed in 1835, was signed, "Mary M. Olcott, guardian for Lizzie Olcott and Sue Olcott, by Levi Davis, her solicitor," was held a sufficient signing by the guardian.

8. SAME—*certificate of publication—its sufficiency—recital of due notice published.* A certificate of the publication of a notice of a guardian's appli-

cation for an order of court to sell lands of his ward, signed "Parks & Pinkard, publishers," was objected to in a collateral proceeding, for the reasons the Christian names of the publishers were not given. The order of sale recited that there was due notice published, etc.: *Held,* that there was no force in the objection.

9. SAME—*amending order of sale without notice.* A decree for the sale of land by a guardian required the sale to be for one-third of the purchase money cash, with a credit of six and nine months for the balance: At a succeeding term, the guardian reported an inability to sell, and obtained, without any further notice, an amended order for a sale, on one, two and three years' credit: *Held,* that the sale under the amended order was valid, and that no further notice was required, as the case was still under the control of the court.

10. SAME—*order of approval of sale entered nunc pro tunc, at the instance of purchaser.* A guardian sold his wards' land in 1866, and reported the same to the court ordering the sale, and there appeared indorsed on the report, its approval by the judge, but no order of approval was entered of record. In 1882, after ejectment by the former wards, the case was re-docketed, and, on motion of the purchaser, an order was entered *nunc pro tunc,* reciting the facts, and the appearance of the wards, and approving the sale: *Held,* that the order of approval was properly made, the court having the undoubted power to correct its records in accordance with its written minutes, and that such order related back to the time when the approval was actually made.

11. A purchaser at a guardian's sale has the right to appear in court and enter a motion for an order of approval of the sale *nunc pro tunc,* in accordance with the judge's minutes, even after the death of the guardian, and have such order made to protect his title. For such purpose he is regarded as a *quasi* party to the proceeding.

12. EVIDENCE — *attacking judicial proceedings collaterally, for mere error.* It is a well settled general rule, that where a court has jurisdiction of the subject matter and of the parties to the litigation, its judgments and decrees will be held valid, when questioned collaterally. In such case, mere errors in the proceeding will not invalidate the judgment or decree.

WRIT OF ERROR to the Circuit Court of Christian county; the Hon. C. S. ZANE, Judge, presiding.

Mr. JNO. G. REID, for the plaintiffs in error:

No power is to be held as granted to an inferior court by implication. *School Inspectors* v. *People,* 20 Ill. 525.

There are no presumptions in favor of the jurisdiction of an inferior court, but the presumptions are adverse to it.

*Shufeldt* v. *Buckley,* 45 Ill. 223; *Haywood* v. *Collins,* 60 id. 328; *Kenney* v. *Green,* 13 id. 432; *Osgood* v. *Blackmore,* 59 id. 261; *Swearengen* v. *Gulick,* 67 id. 209; *Wells* v. *Mason,* 4 Scam. 84.

Courts of an inferior jurisdiction, and of special statutory jurisdiction, must not only act within the scope of their jurisdiction, but it must affirmatively appear on the face of their proceedings, that they so acted, or their proceedings are void. *Chicago* v. *Railroad Co.* 20 Ill. 286; *Donlin* v. *Hettinger,* 57 id. 348; *Haywood* v. *Collins,* 60 id. 328; *Albee* v. *Ward,* 8 Mass. 86; *Kemp* v. *Kennedy,* 5 Cranch, 172; *Johnson* v. *Von Kettler,* 84 Ill. 316; Drake on Attachment, secs. 85-99.

No court can acquire jurisdiction by a false recital of the facts necessary to give jurisdiction. *Dunning* v. *Corwin,* 11 Wend. 648; *Borden* v. *Fitch,* 15 Johns. 121; *Noyes* v. *Butler,* 6 Barb. 616.

A mere recital is no evidence of a jurisdictional fact. *Bouchard* v. *Dias,* 3 Denio, 238.

He who claims under an order of an inferior court, must show, affirmatively, every step essential to jurisdiction,— nothing will be presumed. *Fell* v. *Young,* 63 Ill. 106; *Von-Kettler* v. *Johnson,* 57 id. 109; *Hyslop* v. *Finch,* 99 id. 172; Freeman on Void Judicial Sales, sec. 8.

In statutory proceedings, the statute must, in every respect, be strictly pursued, else the same will be void for want of jurisdiction. *Mason* v. *Wait,* 4 Scam. 127; *Reynolds* v. *Wilson,* 15 Ill. 394; *Young* v. *Keogh,* 11 id. 642; *Herdman* v. *Short,* 18 id. 59; *Gibson* v. *Roll,* 27 id. 92; *Bree* v. *Bree,* 51 id. 267; *Curtis* v. *Bradley,* 75 id. 180; *Botsford* v. *O'Conner,* 57 id. 72; *Haywood* v. *Collins,* 60 id. 329.

When a court of an inferior and limited jurisdiction, (all courts exercising a statutory power are inferior,—*Haywood* v. *Collins,* 60 Ill. 329,) departs from the course prescribed by law in exercising the power it has, the judgment will be not merely erroneous, but absolutely void, and may be so treated

in any collateral proceeding. It is not the indiscreet exercise of a power granted, but the doing of an act for which no power is given. Freeman on Executions, sec. 100, note 2; *Dynes* v. *Hoover*, 20 How. 80; *Jenks* v. *Howland*, 3 Gray, 536; *Peters* v. *Peters*, 8 Cush. 529; *Camp* v. *Wood*, 10 Watts, 121; *Gray* v. *Brignardello*, 1 Wall. 634; Rorer on Judicial Sales, sec. 139; *Thatcher* v. *Powell*, 6 Wheat. 119.

A court may examine collaterally into the jurisdiction of another court to pass upon questions of title to land, and if the other court has done an act *coram non judice*, disregard it altogether. *Klokke* v. *Dodge*, 103 Ill. 125; *Smith* v. *Hileman*, 1 Scam. 323; *Miller* v. *McManis*, 104 Ill. 422; *Hales* v. *Holland*, 92 id. 499.

Mr. H. M. VANDEVEER, for the defendant in error:

Under the statute then in force, the presenting of the written petition, and the publication of the notice, gave the court jurisdiction. (*Spring* v. *Kane*, 86 Ill. 580.) The court having jurisdiction to order a sale, errors, however great, will not avoid the sale when collaterally attacked. *Harris* v. *Lester*, 80 Ill. 307; *Mulford* v. *Beveridge*, 78 id. 455; *Botsford* v. *O'Conner*, 56 id. 72.

The record and the bill of exceptions in this case are so intermixed with the arguments of counsel for plaintiffs, that it is difficult to find what the record is, and want of health to make and print an additional abstract alone prevented from doing so. But if the court will read the record and the cases cited below, they will find every real point made has been decided by this court. *Botsford* v. *O'Conner*, 57 Ill. 72; *Harris* v. *Lester*, 80 id. 307; *Spring* v. *Kane*, 86 id. 380; *Conover* v. *Musgrave*, 68 id. 58; *Mulford* v. *Beveridge*, 78 id. 455; *Andrews* v. *Bernhardi*, 87 id. 365.

By statute, the application for a license to sell must have been made in the county where the wards reside; and, as in this case they resided in the city of Alton, that fact gave the

court jurisdiction, and if the fact that they so resided was intended to be disputed, it could have been put in issue at any stage of the proceedings in that case. *Spellman* v. *Dowse,* 79 Ill. 66.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of ejectment, brought by Lizzie T. Reid, formerly Lizzie T. Olcott, and Susan M. Olcott, against Thomas C. Morton, on May 4, 1880, to recover an eighty-acre tract of land in Christian county. Both parties claim title through Alvin Olcott, deceased, the ancestor of the plaintiffs, and plaintiffs' title to the land is conceded if it was not divested by certain proceedings in the Alton City Court, of Madison county, Illinois, commenced by Mary M. Olcott, their guardian, and resulting in a sale and guardian's deed. The plaintiffs denied that this city court ever had jurisdiction of the subject matter involved here, either as a court of chancery, or under the statute then in force.

On March 8, 1865, Mary M. Olcott, as the guardian of the plaintiffs, filed her petition in said Alton City Court, in which it was stated that she was the legal guardian of Lizzie T. Olcott and Sue Olcott, minors, under the age of eighteen years; that said minors were the owners in fee of certain real estate, which it described; that the petitioner had exhausted all the personal estate of said minors, and that they had no means for their education and support, or for the payment of taxes on the real estate therein described, and that all such real estate was vacant and unoccupied, and was entirely unproductive, and was an expense to said minors, and concluding with the usual prayer for an order authorizing the sale of such lands, etc. At the November term, 1865, said court found, by its decree, that due notice of the pendency of the proceeding had been given to all persons concerned, for at least three weeks prior to the last term, by publication; that the petition was duly filed and presented on the first day of

the last term of court; that the petitioner had faithfully applied all the personal estate of the said minors which had come to her hands, and that it was necessary to sell the real estate described in the petition, for the support and education of such minors, and ordered that petitioner sell said lands, etc., and make report of such sale, etc.

At the first trial, the defendant introduced a transcript of the proceedings in the city court, into which was copied a paper purporting to be a report of sale, unsigned, and without any marks showing that it was ever filed, and no order confirming the sale was shown. The court found for the plaintiffs, when a new trial was taken, under the statute. After the first trial, the defendant procured an order to be entered in the city court *nunc pro tunc*, purporting to confirm the guardian's sale. To the introduction of this order of confirmation the plaintiffs objected, for the reasons that the Alton City Court had no jurisdiction of the subject matter of the application by a guardian for the sale of a ward's land, either under the statutes then in force or by virtue of its chancery powers, and could have no chancery jurisdiction as no part of the lands affected was situate within the limits of the city or in the county of Madison, and because made without notice and subsequent to the commencement of this suit, and because the deed was made before the alleged confirmation.

The questions presented by the record are, first, whether the Alton City Court ever had a constitutional existence; second, did the act of 1859, establishing the Alton City Court, grant jurisdiction to that court; third, conceding this was a constitutional court, whether it had jurisdiction of the subject matter of guardians' applications to sell real estate, or acquired jurisdiction of the subject matter in the case; and fourth, whether the sale was invalid for want of an order of confirmation.

Section 1, article 5, of the constitution of 1848, was as follows: "The judicial power of this State shall be and is hereby

vested in one Supreme Court, in circuit courts, in county courts, and in justices of the peace: *Provided,* that inferior local courts of civil and criminal jurisdiction may be established by the General Assembly in the cities of this State; but such courts shall have a uniform organization and jurisdiction in such cities." Under the proviso of the above section, the General Assembly, in 1853, passed a law (Laws 1853, p. 147,) entitled "An act to establish the recorder's court of the city of Chicago." Section 1 of this act provided that the recorder's court should have concurrent jurisdiction, within said city, with the circuit court, of civil cases, where the amount in controversy should not exceed $100, and in all criminal cases, except treason and murder; and further, that said court, and the judge and clerk thereof, should, respectively, have the like power, authority and jurisdiction, and perform the like duties, as the circuit court and the judge and clerk thereof, in relation to all matters, suits, prosecutions and proceedings within the city of Chicago, so far as the same were not otherwise limited by the act.

By an act entitled "An act to establish the Court of Common Pleas of the city of Cairo," approved February 6, 1855, (Laws 1855, p. 155,) the General Assembly granted to said court civil and criminal jurisdiction in all cases, except in cases of treason, and in cases wherein the demand exceeded the sum of $50,000, and concurrent jurisdiction within the city, and within township 17 south, and range 1 west, of the third principal meridian, with the circuit court, except in the cases above excepted.

The General Assembly, by an act approved February 10, 1857, (Laws 1857, p. 29,) entitled "An act to give an uniform organization and jurisdiction to inferior courts of local jurisdiction in the cities of this State," provided that every act establishing an inferior court of civil and criminal jurisdiction in any city of this State, should be so construed as to confer on such court an uniform organization and jurisdic-

tion with the recorder's court of the city of Chicago and the court of common pleas of the city· of Cairo, anything in any such act to the contrary notwithstanding.

The General Assembly, in 1859, by an act approved February 9, 1859, (Laws 1859, p. 71,) established the Alton City Court, and by the first section of the act granted to the court concurrent jurisdiction, within the city of Alton, with the circuit court of Madison county, in all civil and criminal cases, except cases of treason and murder. The second section provides that the judge of said court shall possess the same powers as are vested in the judges of the circuit court, except as limited in the act. Section 25· of the act declares, that "the act entitled 'An act to give a uniform organization and jurisdiction to inferior courts of local jurisdiction in the cities of this State,' approved February 10, 1857, shall be made a part of this act as fully as if the same had been incorporated herein."

As showing that the Alton City Court never had a legal existence, it is insisted that the act of February 10, 1857, is absolutely void for uncertainty, repugnancy and inconsistency, in that it is impossible to confer upon any court a jurisdiction at once uniform with the various jurisdictions of the ·recorder's court of Chicago and the court of common pleas of Cairo, and for the further reason, that the act of February 6, 1855, is void for unconstitutionality, in granting jurisdiction without the city of Cairo and within township 17 south, etc., and the act of 1855 being thus void, makes void the act of 1857, inasmuch as the latter refers to and adopts the former,—and hence it is argued that the entire act of 1859 establishing the Alton City Court is void, because, in its 25th section, it refers to and adopts those acts.

The matter of uncertainty, repugnancy and incongruity in the act of 1857, in conferring upon all other city courts an uniform jurisdiction with the recorder's court of Chicago and the common pleas court of Cairo, the two latter courts hav-

ing differing jurisdictions, might raise some doubt as to the precise extent of jurisdiction in criminal cases, and in civil cases where there was an amount in controversy; but this would be but a question of construction, and would not go to the validity of the act, especially in the particular of this proceeding for a guardian's sale, where there is no amount in controversy, and of which such recorder's court had undoubted jurisdiction, from the grant to it of like power and authority as the circuit court had in relation to all proceedings within the city of Chicago, except as limited by the act establishing the court. We do not think, as suggested, that this meant only the general power and authority of the circuit court, and did not embrace its special statutory powers, like this one, of authorizing a guardian to sell his ward's land. A statute may be void in part, and good as to the residue. And conceding, without expressing any opinion upon the subject, that the act of 1855 was void in its conferring jurisdiction outside of the territorial limits of the city and within township 17, we should hold the act valid in so far as it conferred jurisdiction within the city.

It is further urged, under this head, that it is only inferior local courts which, under the constitution of 1848, might be established in cities, and that this Alton City Court is not an inferior court, inasmuch as it has concurrent jurisdiction, within the city of Alton, with the circuit court of Madison county, in all civil cases. It has not equal jurisdiction with the circuit court of Madison county in criminal cases, and its jurisdiction, in territorial extent, is less than that of the circuit court. Making it a court of record does not, in our opinion, make it, as contended, a superior, and not an inferior, court, within the meaning of the constitution. It is not plain just what was meant by this use of the word "inferior," in the constitution, in application to courts. A statute should not be pronounced unconstitutional upon the doubtful meaning of the term "inferior," as applied to a court. The Alton

City Court was, in dignity and in jurisdiction, an inferior court to the Supreme Court, and to the circuit court, and we can not say that it was not an inferior local court, within the intendment of the constitution.

It is next insisted, that if the Alton City Court was legally created, it did not have jurisdiction of the subject matter of an application by a guardian for license to sell the real estate of his ward. The first section of the act of February 9, 1859, grants to the Alton City Court concurrent jurisdiction, within the city of Alton, with the circuit court of Madison county, in all civil cases. Much research has been displayed by plaintiffs' counsel, in the way of investigation and citation of authorities, to show that proceedings for the sale of real estate of minors by guardians are not "cases," in the sense in which that term is used in that section, and that a general reference clause, as here, granting concurrent jurisdiction with the circuit court, confers only the general and ordinary powers and jurisdiction of the tribunal referred to; that special and extraordinary statutory powers, such as that of this proceeding by a guardian, are not embraced in such a general reference clause, and can not be conferred except by express mention,— all which would be quite pertinent, were the sole authority for entertaining the proceeding based upon this general grant of jurisdiction in section 1; but section 2 of the act declares, that the judge shall possess the same powers as are vested in the judges of the circuit court; and the act establishing the recorder's court of Chicago provides that said court, and the judge thereof, should have the like power, authority and jurisdiction as the circuit court, and the judge thereof, in relation to all matters, suits, prosecutions and proceedings within the city of Chicago, so far as the same were not otherwise limited by that act,—the limitation having no application here. The act of 1857, to give an uniform jurisdiction to inferior courts of local jurisdiction, in cities, provides that every act establishing an inferior court of civil and criminal

jurisdiction, in any city, should be so construed as to confer on such court an uniform jurisdiction with the recorder's court of Chicago, and the court of common pleas of Cairo. And the 25th section of the act of 1859, creating the Alton City Court, declares that that act of 1857 shall be made a part of such act of 1859, as fully as if the same had been incorporated therein. In view of all this, we can have no doubt that there was granted to the Alton City Court, not only concurrent jurisdiction, within the city of Alton, with the circuit court, in all civil cases, but that there was granted, besides, to the judge the same powers possessed by the judges of the circuit court, except as limited in the act, which included the power to order sale of a minor's land by his guardian. Although the grant of such power, specifically and in terms, is made only to the circuit court, there is, it seems to us, no good ground for the claim made, that the power is exclusive in such court, where, as here, there is expressly granted to the city court concurrent jurisdiction with the circuit court, and also to the judge the same powers as above named.

It is contended, next, that if there was a general grant of jurisdiction over such a guardian's proceeding, there was a want of jurisdiction in this particular case, because the lands were situated outside the city of Alton, and in the counties of Christian and Montgomery. It is said this guardian proceeding is one *in rem,* and that in order for jurisdiction of the subject matter in a particular case, the *res*—the real estate—must be situated within the city. The provision of the general statute, at the time when this application was made by the guardian, was, that the guardian's application for the sale of his ward's real estate shall be made in the county where the ward resides, although the real estate may lie in a different county. But it is denied that the General Assembly had the power, under the constitutional proviso above, to vest jurisdiction in municipal courts, where the subject matter of the proceeding, or the thing to be affected,

9—119 ILL.

is wholly outside of the city limits. That provision is, that inferior local courts of civil and criminal jurisdiction may be established by the General Assembly in the cities of this State. And in *People* v. *Evans*, 18 Ill. 362, this court held that provision limited the territorial jurisdiction of the courts to be established thereunder, to the cities within which they should be created. The term "jurisdiction," as used in this limitation of that provision, we think is to be held to relate to the exercise of such powers, only, as are judicial in their nature, and that this power of authorizing a guardian to sell his ward's real estate is not a power of that description. In *Rice* v. *Parkman*, 16 Mass. 326, the court, in speaking of this power, say it is a power analogous to that exercised by the British Parliament, on similar subjects, time out of mind; that "it does not follow, because the power has been delegated by the legislature to courts of law, it is judicial in its character. For aught we see, the same authority might have been given to the selectmen of each town, or to the clerks or registers of the counties, it being a mere ministerial act,— certainly requiring discretion, and sometimes knowledge of law, but still partaking in no degree of the characteristics of judicial power," etc. And see Cooley's Const. Lim. (5th ed.) 118, where, in speaking of the powers conferred by general laws upon courts in this and like matters, suggestion is made, and seemingly adopted, whether such power of sale is not so conferred upon courts, "not because the cases fall necessarily within the province of judicial action, but because the courts can more conveniently consider, and properly, safely and inexpensively pass upon such cases, than the legislative body to which the power primarily belongs." We are of opinion the General Assembly was not deprived of the authority, under the constitution, to confer on city courts the power to order guardian's sale of a ward's real estate situated without the cities in which the courts were established, and that in this case, the wards residing in the city

of Alton, the power was rightly given to and exercised by the guardian to sell their real estate situated without the city.

Irregularities and errors in the course of the proceeding are insisted upon as invalidating the guardian's sale. It is certainly the well settled general rule, that when a court has jurisdiction of the subject matter and of the parties to the litigation, its judgments and decrees will be held valid when questioned collaterally. And this court has many times applied the rule in the very case of this special, statutory and extraordinary proceeding of a guardian's sale, which this is so much dwelt upon as being. *Young* v. *Lorain*, 11 Ill. 624; *Mulford* v. *Stalzenback*, 46 id. 303; *Spring* v. *Kane*, 86 id. 580. In *Mulford* v. *Stalzenback*, it was said, in reference to such a sale, that it was sufficient for the purchaser to see there was an order of court for the sale of the land, and made by a court having jurisdiction to make the order. The statute under which the proceeding was had,—section 10, chapter 47, of the Revised Statutes of 1845,—empowered the court to order a sale of the real estate of the ward on application of the guardian, by petition in writing, stating the facts, requiring publication of notice in a newspaper, three weeks before the sitting of the court. There was, here, such petition and publication of notice,—the petition stating the residence of the wards to be in the city of Alton, and stating such facts as would make a case for the granting of the order of sale. This gave the court jurisdiction.

It is objected that there was no petition of the guardian in writing, because the petition was not signed by the guardian personally. It appears to be signed, "Mary M. Olcott, guardian of Lizzie Olcott and Sue Olcott, by Levi Davis, her solicitor." We regard this a sufficient signing,—that a petition thus signed, constituted, in the language of the statute, an "application of the guardian by petition in writing."

Objection is taken, that the certificate of publication was signed, "Parks & Pinkard, *Publishers*," not giving their Chris-

tian names.   There is no merit in this.   The order of sale
recites due notice, by publication of the notice in the news-
paper.

At the next term of the court after the making of the order
of sale, to-wit, at the April term, 1866, on petition by the
guardian, the order of sale was amended as to terms of sale,
by permitting the sale on a credit of one, two and three years,
the terms in the original order being one-third of the purchase
money cash, and the residue upon a credit of six and nine
months.   It is objected that this amended order, under which
the lands were sold, was void, because made at a subsequent
term, and without notice.   The guardian had represented she
was unable to sell upon the original terms, except at a sacri-
fice, and asked for the credit.   We think the amended order
of sale was very properly made, and that it was competent
for the court to make it as it did, and without notice having
been given.   The case had not before been finally disposed
of, but yet remained within the power of the court, subject to
have further orders made therein.

Other objections as to the validity of the order of sale, as,
for the want of sufficient proofs, alleged deviations from the
statute, etc., touch what would be no more than errors in the
exercise of jurisdiction, and can not be availed of in this col-
lateral proceeding.

Objection is taken to the want of approval of the guardian's
sale.   Such approval this court has held to be necessary in
order to divest the title of the ward.   (*Young* v. *Keogh*, 11 Ill.
642; *Rawlings* v. *Bailey*, 15 id. 178; *Musgrave* v. *Conover*,
85 id. 374.)   The sale took place June 25, 1866, and the
guardian's deed was made on the same day.   Up to that time,
the court records showed no approval of the report of sale.
The record shows, that at the February term, 1882, of the
Alton City Court, the guardian proceeding was re-docketed;
that the wards appeared by their counsel, and on motion of
Jacob Kline and James W. Hodge, who were purchasers of

lands at the guardian's sale, there was made the following order: "It is ordered, adjudged and decreed by the court, that the report of sale in this suit, made by Mary M. Olcott, guardian, under a former decree of this court, having been approved by this court on the 22d day of November, A. D. 1866, as fully appears by the indorsement on said report, by the judge of this court, at that day, and the approval of said report not having been entered by said judge, on the docket, approved, the said report of said sale is approved *nunc pro tunc."* We think such order was properly made, and that it showed a valid approval of the report of sale. It was but spreading upon the record what had actually been done by the court, as appeared by the judge's minutes, but had failed to be entered of record. The power of a court to correct its records in accordance with its own minutes, is undoubted.

It is said the rights of parties must be determined according to the state of the title at the commencement of the suit,— that a party can not avail himself of an act done after the commencement of the suit, which is essential to perfect his title. The act of approval was the thing essential, and this did not take place at the February term, 1882, when the *nunc pro tunc* order was made, but the approval had previously been made, and before the commencement of the suit, and such order was but placing upon the record the evidence of the court's former act of approval.

It appears that the guardian had been dead for a number of years before the making of such order, and it is claimed that on that account the order was void. The motion upon which the order was made, was by the purchasers at the guardian's sale. They were the persons interested in the matter, in order to the protection of their titles, and we think they were entitled to make the motion and have the order made on their behalf, although the guardian had deceased. In 2 Daniell's Chancery Pl. and Pr. (5th ed.) 1062, note 5, it is

said: "Purchasers under decrees in chancery are regarded, to a certain extent, as parties to the suit, so as to be under the control of the court, on the one hand, and its protection, on the other." And on page 1592, in speaking of persons by whom motions in a cause may be made, the author says: "A person who is *quasi* a party to the record, such as a claimant coming in under a decree, or a purchaser of an estate sold by order of the court, may also apply to the court in this manner."

The objection of the want of notice to the wards is manifestly of no force, as the order recites they appeared by counsel.

The point is made that the lands, merely, were sold and conveyed, and not the interest of the wards in the lands. The statute was followed in this respect. It directs that the court shall order the sale of the real estate of the ward, and declares that the effect shall be to vest in the purchaser all the interest the ward had in the estate so sold.

We are of opinion the guardian's deed divested the title of the wards, and conveyed the same to the grantee in the deed. The judgment will be affirmed.

*Judgment affirmed.*

The record in this case was assigned to Judge DICKEY, and he not having prepared an opinion in his lifetime, the record was re-assigned at the November term, 1885.

SHOPE, MULKEY and MAGRUDER, JJ.: We concur in the conclusion, but not in all that is said in the opinion.