GEORGE S. SWIFT, RECORDER OF THE CITY OF DETROIT, v. THE JUDGES OF THE CIRCUIT COURT FOR WAYNE COUNTY.

*Recorder's court of Detroit—Review by certiorari in circuit court of conviction under municipal ordinance—Jurisdiction.*

1. The circuit court of Wayne county has jurisdiction to review a conviction in the recorder's court of the city of Detroit, for the violation of a city ordinance, by *certiorari,* said last-named court, acting in such a case, being inferior to the circuit court.

2. The common-law definition of an "inferior court" always means a court which is not one of the four great courts of the realm; that is, the court of chancery and the three great common-law courts sitting at Westminster. Toml. Law Dict. "Inferior Courts."

3. The recorder's court of Detroit is a court of record by name, and, so far as it has common-law powers, its records are treated as common-law records; but it also has special and peculiar powers, where its records are open to the more or less limited objections allowed by all jurisprudence in such peculiar cases.

4. For an exhaustive review of the question of the relative jurisdiction of various courts, see opinion.

Application for *mandamus* or prohibition to prevent the circuit court of Wayne county from reviewing, by *certiorari,* a conviction in the recorder's court of the city of Detroit for the violation of a city ordinance. Heard January 11, 1887. Denied January 20, 1887. The facts are stated in the opinion.

*Henry M. Duffield,* for relator.

*George H. Prentis,* for respondents.

CAMPBELL, C. J.    A writ of *certiorari* was issued by the circuit court for the county of Wayne to review a conviction in the recorder's court of Detroit for an alleged violation of a city ordinance. The recorder applies to us for a *mandamus*

or prohibition to prevent the circuit court from exercising this jurisdiction. The whole question turns on the inquiry whether the recorder's court of Detroit, acting in the particular case in controversy, is a court inferior to the circuit court.

The Constitution of Michigan, in terms, gives to the Supreme Court a general superintending control over all inferior courts, with power to issue writs of error and other writs named, both original and appellate. Art. 6, § 3.

By section 8 of the same article the circuit courts are given general civil and criminal jurisdiction, except as otherwise provided, and appellate jurisdiction and supervisory control over all "inferior courts and tribunals" within their jurisdictions.

By section 1 "the judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace. Municipal courts of civil and criminal jurisdiction may be established by the Legislature in cities."

By section 15 the Supreme, circuit, and probate courts are declared to be courts of record, and required to have each a common seal.

A preliminary question is, what is meant in this Constitution by the term "inferior courts?" The relator's argument is largely based upon what counsel suppose to be the common-law definition of an inferior court, which always means a court which is not one of the four great courts of the realm; that is, the court of chancery and the three great common-law courts sitting at Westminster. Toml. Law Dict. "Inferior Courts."

Another less accurate distinction is found in the distinction between courts of record, whose records establish themselves, and are valid judgments in themselves, and courts not of record, proceeding under special conditions, whose jurisdiction is not presumed. The recorder's court is a court of record by name, and, so far as it has common-law powers,

its records are treated as common-law records. But it also has special and peculiar powers, where its records are open to the more or less limited objections allowed by all jurisprudence in such peculiar cases. And it is very well known that in England there have always been many courts, not sitting at Westminster, whose records are respected. The term "inferior" is not of one single meaning in law, but is used in different senses. Under the Constitution of the United States, Congress has no power to create courts which are not inferior to the Supreme Court. The cases cited by counsel from the decisions of that court do not claim that the circuit and district courts are not inferior to the Supreme Court, but merely that, being courts of general powers and of record, they are not inferior courts in the sense in which that word is sometimes used to distinguish courts among themselves after their kind. In England, error lay to the common pleas out of the king's bench, making the former, in our constitutional sense, inferior to the latter, while both ranked as superior courts. So all of them were subject to review by the exchequer chamber, and that by the house of lords. Our American constitutional use of the word refers to relative rank and authority, and not to intrinsic quality. Under our own Constitution, as under that of the United States, the Supreme Court could have no appellate power or supervision over the circuit courts except on this idea that they are inferior to it, for none but inferior courts are subjected to it, and the jurisdiction of our circuit courts equals that of the English superior courts. And if the argument for the secondary English rule is valid, resting on the distinction between courts of record and others, both circuit and probate courts being declared courts of record, and not in terms made subject to the Supreme Court by the Constitution, except as by their nature inferior to it, no supervisory power could exist in either Supreme or circuit courts over the probate courts. Yet the latter have been made subject

64 MICH.—31.

to the circuit courts, and continue so, and their powers are subject to legislative control. They are not common-law courts of record.

There is, however, a significant difference between the Supreme and circuit courts in regard to the scope of their supervisory jurisdiction. The circuit court has not been given any express power to issue writs of error, which are the only writs adapted to reviewing ordinary common-law judgments. In the charter of Detroit the only proceedings in the recorder's court expressly provided for as appealable to any other court are required to be removed to the Supreme Court "by writ of error, or other process, in the same manner that like proceedings may by law be removed to the Supreme Court from the circuit courts of the State." Local Laws 1883, p. 641.

On examining the charter, it will be found that these courts have no like proceedings with the circuit courts, except in common-law cases. Special proceedings are always statutory, and must be conducted where the statute places them, and the circuit courts have no jurisdiction over ordinance cases under their original powers.

The charter unquestionably puts the criminal business and the street and alley cases expressly beyond the jurisdiction of the circuit court, either original or appellate. The real controversy is whether the fact that a part of its jurisdiction is exempt from circuit court supervision prevents the recorder's court from being inferior to the circuit.

The primary purpose of the recorder's court was to serve as an agency of the city in enforcing by-laws and ordinances and other municipal business. It succeeded to the mayor's court, which, by the charter of 1827, if not earlier, was made a court of record, and vested with all of the ordinary powers of the present recorder's court, except its jurisdiction over crimes. By that charter, and amendments to it, the mayor's court was given a very large common-law juris-

diction of all civil cases arising within the city in which the city was a plaintiff, and those cases were required to be tried according to the rules governing the circuit courts. Act of April 13, 1841, § 3. Nevertheless, in spite of its character as a court of record trying and adjudicating these common-law issues, without reference to their magnitude, which might include many thousand dollars, and which in their nature were of as high a nature as indictments, an appeal lay to the circuit court of Wayne county, subject to the rules governing appeals from justices. Act of 1841, § 4.

In *Welles v. Detroit*, 2 Doug. 77, an attempt was made by the city to prosecute a debtor by attachment proceedings in the mayor's court, claiming that in common-law city causes it had the same jurisdiction as the circuit; but the judgment was taken directly to the Supreme Court by *certiorari*, and not by writ of error, where it was held that the civil jurisdiction of this court was limited as expressed, and could not be extended by construction so as to embrace this extraordinary remedy, which in terms was allowed to circuit courts by name, and the proceedings were quashed.

Under the old Constitution, which did not define or grant jurisdiction to the circuit courts, but left all but the Supreme Court to be provided for at discretion, the circuit courts had their whole appellate power provided for by statute. The mayor's court was not only put under the circuit court, but its judgments were all open to appeal and retrial on the merits. The Supreme Court alone could issue writs of error and *certiorari* under its common-law jurisdiction. Under the Constitution of 1850, as already seen, the circuit courts were empowered to issue writs of *certiorari* in the exercise of their supervisory control. In the circuit court acts, no provision was made for the writ of *certiorari*, except in special cases, and it seems to have been supposed the power was entirely statutory. But when the question was brought into this Court, it was held that the right to issue a common-law

*certiorari,* being given by the Constitution, could not be taken away by statute, and existed in the circuit courts as an inherent power. *Thompson v. School District,* 25 Mich. 483; *Taylor v. Judge of St. Clair Circuit,* 32 Id. 95; *Merrick v. Township Board,* 41 Id. 631; *Wilson v. Bartholomew,* 45 Id. 41.

In 1857 the charter of Detroit was revised and re-enacted, and then, for the first time, the recorder's court was provided for, to succeed and carry out the powers of the mayor's court substantially as before; but it was also to have exclusive jurisdiction for the trial, but not for the finding of indictments, of all indictable crimes committed in the city of Detroit. In the trial of these cases, and in reviewing them, the general laws of the State, as provided for the circuits, were made by the charter to apply, and, as already suggested, the removal to the Supreme Court was to be in the same way provided for like cases in the circuit courts. Charter, *c.* 6, § 24, and subsequent sections *passim.*

In this charter the system of procedure for other cases was otherwise regulated, and the jurisdictions were kept separate, not only in beginning suits and issuing process, but also in employing city officers for city cases, and the local criminal officers representing the ordinary criminal authority for criminal cases. In a recent revision of the charter, in which these matters were partially confounded, so as to give, as was claimed, exclusive and different methods of prosecution and complaint to the recorder's court, we held there was no such distinction, and the amendment, as far as attempting it, invalid. *People v. Judge of the Recorder's Court,* 59 Mich. 529.

There can be no doubt that, at least up to 1857, the mayor's court was legally regarded as an inferior court, subject to the review of the circuit. It is equally clear that the recorder's court is the same court, with an enlarge1 jurisdiction. It is also apparent that, in giving this broader jurisdiction, not

only were its methods and conditions in the new jurisdiction prescribed, but special provision was made for the review of the judgments rendered under it. No provision whatever is expressly made for the review of the action of the court under the ordinances.

It was claimed, in a litigation that arose in an ordinance case several years ago, that the section which gives jurisdiction on appeal to the Supreme Court over convictions, in analogy to circuit court cases of similar character, constructively applied to convictions under ordinances. But in the several controversies which came up consecutively between the city and the same citizen for an alleged illegal closing of an alley, the double character of the recorder's court, and of appellate proceedings from it, was pointed out and distinguished.

In *People v. Jackson,* 7 Mich. 432, respondent had been convicted by the recorder's court, under a regular criminal information, for closing the alleged alley, and the case was properly brought up before sentence, and decided here on the exceptions. But the case was held to involve no criminal offense, and the conviction was set aside for that reason.

Thereupon the city prosecuted him under an ordinance intended to cover the case, and he was again convicted. The recorder undertook to reserve the questions for consideration by this Court, as could have been done under the criminal practice, and reliance was had on the clause of the charter before referred to as regulating removals to this Court. The Court held that, when he tried cases under the ordinances, he was acting merely as a municipal officer, enforcing regulations of which we could not take judicial notice, and that no cases could be reserved except where he performed the functions of a circuit judge under the laws of the State. The proceeding was therefore dismissed. *People v. Jackson,* 8 Mich. 78.

A second attempt was made in the same case to bring it up

on exceptions before judgment. *People v. Jackson*, 8 Mich. 110. This was dismissed on the same ground, and the double character of the court was again fully discussed, and the charter construed, as before, as keeping the two jurisdictions separate. It was brought up a third time on writ of error (*Jackson v. People*, 8 Mich. 262), and dismissed again as not subject to writ of error. It was last brought up on *certiorari* (*Jackson v. People*, 9 Mich. 111), when the conviction was quashed for excess of jurisdiction in attempting to decide by a municipal court a controversy which involved rights that could only be determined by the laws and courts of the State.

We have found no authority for holding that a municipal court changes its relative position to other courts by becoming invested with new powers which those courts cannot review. Such instances are by no means rare, and it has always been found possible to keep the powers distinct. All common-law courts of record in the United States have been given certain powers under the naturalization laws of Congress, but this has never been supposed to bring that jurisdiction under the control of State appellate courts. The Supreme Court of the United States has recognized the existence of special powers granted to circuit and district courts as outside of its judicial cognizance. *United States v. Ferreira*, 13 How. 40.

In *Auditor General v. Pullman Palace Car Co.*, 34 Mich. 59, where the circuit court of Ingham county was given jurisdiction of appeals from the Auditor General in certain cases, we held that the proceeding was aside from the ordinary judicial jurisdiction, and therefore not subject to our review in any shape.

In *Southwick v. Postmaster General*, 2 Pet. 442, the case was quite parallel with this. There a suit was brought in a district court of the United States, having circuit court powers at common law, and judgment was rendered, which

was removed regularly by writ of error to the circuit court of the same district, where it was affirmed. A writ of error was then taken from the circuit to the Supreme Court. Under the act of Congress, the district court had been empowered to act in such cases either as a district or a circuit court, and it did not appear on the record in which capacity it acted. If acting as a district court, the action of the circuit court on error could not be reviewed by the Supreme Court. If acting as a circuit court, the decision of the regular circuit court, on error from it, could be reviewed by the Supreme Court. Chief Justice Marshall held it must be presumed to have been acting as a district court, and so the writ of error was dismissed. He said:

"Had the court for the Northern district of New York possessed no circuit powers, it could still have taken cognizance of this cause. By conferring on it the powers of a circuit court, Congress has added nothing to its jurisdiction in this case. In taking cognizance of it, a district court has exercised the ordinary jurisdiction assigned to that class of courts. No extraordinary powers were brought into operation. We cannot say that a district court, performing the appropriate duty of a district court, is sitting as a circuit court because it possesses the powers of a circuit court also."

The fact that the recorder's court acts as a State criminal court in criminal cases does not make it any the less a city court in city cases. It has already been decided that these ordinance cases involve not State law, but city law, and must be reviewed on *certiorari*. So far as these cases are concerned, the charter has not been substantially changed, and there is no reason to suppose the Legislature meant any change. The remedy by appeal has been dropped very wisely, as State courts are not designed to act as municipal courts; but no interference has been had to provide any other remedy, so that the *certiorari* is the only one to be used. The review of such cases is as appropriate for the circuit court now as it was prior to 1857. It is plain enough that a municipal court is presumptively inferior to a circuit

court, so far as its jurisdiction is not of equal character. We can see no difficulty whatever in separating the two jurisdictions. That separation exists in the circuit courts themselves, between law and equity, between civil and criminal jurisdiction, between original and appellate jurisdiction.

We think the *certiorari* was properly issued, and the application of relator must be denied. No costs will be awarded, as relator acts officially in an entirely proper effort to have his duty defined.

The other Justices concurred.