(No. 22675.—

THE PEOPLE *ex rel.* Michael Sokoll *et al.* Appellees, *vs.* THE MUNICIPAL COURT OF CHICAGO *et al.* Appellants.

*Opinion filed December 19, 1934—Rehearing denied Feb. 7, 1935.*

HIRAM T. GILBERT, for appellants.

SAMUEL A. & LEONARD B. ETTELSON, (SAMUEL A. ETTELSON, EDWARD C. HIGGINS, and CARL J. APPELL, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on certificate of importance of the Appellate Court for the First District. Appellants seek reversal of the judgment of that court reversing a judgment of the superior court of Cook county which dismissed for insufficiency in law a petition of appellees for a writ of prohibition and remanding the cause to that court with directions to issue the writ as prayed. The petition for

writ of prohibition was filed in the superior court by the People, on relation of Michael Sokoll and George Egan, against the municipal court of Chicago and Thomas A. Green, a judge thereof, seeking an order prohibiting that court and judge attempting to exercise any further jurisdiction over a proceeding, styled one in contempt, then pending before Judge Green. A motion to strike, which appears to have been treated as a demurrer to the petition, was sustained and the petition was dismissed.

The facts set out in the petition and admitted by the demurrer are substantially as follows: On May 22, 1933, an information was filed against one Iver Swedberg charging him with negligently driving a motor vehicle on the highway in the city of Chicago, by reason whereof he injured a certain person and damaged his property, and that Swedberg left the place of injury without giving his name to a police officer, in violation of section 41a of the Motor Vehicle act. On May 29 Swedberg was arraigned before Judge Green and a trial was had without a jury. He was found guilty and sentenced to the house of correction for a period of ninety days and fined $25. A *mittimus* was on that day issued and Swedberg was incarcerated in the house of correction. On June 16 following, Judge Green entered an order in the municipal court in the same case, reciting that a motion for writ of error *coram nobis* or *quæ coram vobis residant* had been filed, and that on consideration thereof it was directed that Swedberg be brought before him on the next day for a hearing on a petition "under section 89 of the Practice act." Swedberg's petition stated that he was without counsel or means to employ one; that he was tried without an opportunity to communicate with anyone for advice, and that if he had the benefit of counsel his rights would have been protected and preserved and the facts would have been brought out more clearly and forcibly. Hearing on this petition was continued, and on June 20 Judge Green entered an order ap-

pointing one William Roach *amicus curiæ*. Roach on June 23 filed a petition in the nature of an information against the appellees, Sokoll and Egan, and also against Morris Markin, Paul L'Amoreaux and William McAvoy, seeking a rule on them to show cause why they should not be punished for contempt of court for conspiring to cause Swedberg to give false testimony on the trial against him by procuring him to testify that he was the owner of the motor vehicle driven by him at the time of the offense charged in the information against him, whereas the facts were that the motor vehicle belonged to the Checker Taxicab Company. In this information Roach charges the respondents therein named with the offense of willful and malicious obstruction of justice at the time it was being administered in the municipal court. The information also alleges that Markin and L'Amoreaux reside in New York City, and that they, and other persons unknown, conspired to secure possession of a great number of companies engaged in transporting persons for hire and to unlawfully fix the sale price of automobiles to be manufactured for a use constituting a part of interstate commerce. There follow in that petition thirty-four specifications, which it would unduly lengthen this opinion to set out but which in substance charge the persons named therein with conspiracy to form a combination for the control of the manufacture, sale, use and traffic in automobiles to be used for taxicab purposes; with attempting to secure, through the subserviency of municipal bodies and legislatures of the various States, a complete control of taxicab fares in the various cities; with conspiring to fix the price of taxicabs and to violate the so-called Clayton act of Congress by unlawful agreements with relation to the sale of automobiles, and to violate the so-called Sherman act of Congress; with conspiring to deprive taxicab drivers of their liberty and property, to administer the laws of the States and the United States and cause them to be administered in a manner

different from the intent thereof, to violate laws against illegal restraint of trade, commit the crime of perjury in courts, secure legislation by bribery, prevent persons owning their own taxicabs earning a means of livelihood, to organize insurance companies for bonding taxicabs, and conspiring to do other acts affecting the taxicab business, and that in pursuance of that conspiracy the parties named in the information, including appellees, caused Swedberg to testify that he was the owner of the taxicab involved in the case against him, whereas it was owned by the taxicab company. There were other charges of like nature. The hearing on the information filed by *amicus curiæ* was continued until July 21, 1933. Two days prior thereto the petition in this case was filed. That petition sets out that the municipal court is a court having jurisdiction inferior to that of the superior court; that it had no jurisdiction of the subject matter of the information filed by *amicus curiæ* and had no jurisdiction to hear the petition or motion of Swedberg under section 89 of the Practice act, because he had already begun to serve the sentence imposed on him.

Appellees in their petition deny that they in any way attempted to procure Swedberg to testify that he was the owner of the vehicle involved, and aver that under section 41*a* of the Motor Vehicle act it was wholly immaterial whether he was such owner, as the act applies to the person operating the car at the time of the injury and who drove away without leaving his name with a police officer. The petition further charges that Judge Green had publicly announced his intention to strike any answers which relators might file to the rule to show cause, and that upon hearing he proposed to conduct a general and comprehensive investigation of the business and affairs of the Checker Taxicab Company, with the view of determining whether that company is conducting a monopoly in restraint of trade in violation of Federal and State laws, and

to determine the other matters raised by the petition or information filed by *amicus curiæ*. It is also alleged that other statements of like character were made by Judge Green.

The question presented here is whether the Appellate Court erred in reversing the judgment of the superior court and remanding the cause to that court with directions to issue the writ as prayed. The determination of that issue requires consideration of the questions whether the superior court had jurisdiction and power to issue a writ of prohibition directed to the municipal court of Chicago, and, if it had that power, whether it erred in refusing to issue the writ. Upon this last phase of the issue arises consideration of the question whether the municipal court had jurisdiction of the subject matter of the petition filed by Roach as *amicus curiæ*. The principal question in the case is whether the superior court of Cook county had power and authority to issue a writ of prohibition as prayed.

The writ of prohibition is of ancient origin. It has always been defined as an extraordinary writ issued out of a court of superior jurisdiction and directed to an inferior court for the purpose of preventing the inferior court usurping jurisdiction with which it is not legally vested and to keep such court within the limits prescribed for it by law. (*People* v. *Circuit Court of Washington County*, 347 Ill. 34; 8 Bacon's Abridgment, 206, 207; 3 Blackstone's Com. 112.) The circuit courts of the State and the superior court of Cook county have general original jurisdiction of cases arising in law and equity and are the only courts in this State having original jurisdiction to issue writs of prohibition. This court and the Appellate Courts do not have original jurisdiction in such matters but may issue such writs only in aid of or to protect their appellate jurisdiction as ancillary thereto. (*People* v. *Circuit Court of Cook County*, 169 Ill. 201; *Campbell* v. *Campbell*, 22 id. 664.) The test whether a court has power to issue a writ of prohibition directed to another court rests not upon the

power to review the judgments of such other court but whether the latter court is one of inferior jurisdiction. Under practice long recognized at common law, the courts at Westminster issued writs of prohibition to numerous courts whose judgments the courts of Westminster had no power to review. 2 Coke's Institutes, 602; *People* v. *Circuit Court of Washington County, supra.*

The question, then, is whether the municipal court of Chicago is inferior in jurisdiction to the superior court of Cook county or the circuit courts of the State. The word "inferior," as used in this connection, does not relate to the intrinsic quality of the court but to its relative rank as compared with the court wherein the writ is sought. Counsel for appellants argues that as the municipal court is a court of record it cannot be said to be inferior to the superior court. But such is not the test. The test generally recognized is its relative rank as compared with that of another court. (*Swift* v. *Wayne Circuit Judges,* 64 Mich. 479, 31 N. W. 434; *Croasdale* v. *Court of Sessions,* 88 N. J. L. 506, 97 Atl. 585.) In *Reid* v. *Morton,* 119 Ill. 118, the question whether the Alton city court was inferior in jurisdiction to the circuit court was considered. A city court has concurrent jurisdiction with the circuit court in cases arising within the city. The test in that case applied was whether the jurisdictions of the courts are equal. It is there pointed out that the fact that the city court is a court of record does not make it a superior rather than an inferior court within the meaning of the constitution. It was held that the city court is inferior to the circuit court. In *Wolf* v. *Hope,* 210 Ill. 50, it was held that while a city court is not an inferior court in the sense that appeal lies from that court to the circuit court, yet it does not have equal jurisdiction with that court in that it is not a court of unlimited jurisdiction as is the circuit court, and also is more limited in the extent of the territory in which its jurisdiction may be exercised. In *Miller* v. *People,* 230

Ill. 65, it was held that a court established for the purpose of administering the law within a city and having no jurisdiction outside the city limits is not a superior but an inferior court. In *Lott* v. *Davis,* 264 Ill. 272, it is pointed out that the municipal court has none of the more important classes of jurisdiction of circuit courts and cannot be regarded as in the same class or grade as circuit courts.

Counsel for appellants argues that these cases are not applicable to the municipal court of Chicago as it is now constituted under the recent amendments to the Municipal Court act, and he has filed an elaborate brief concerning the jurisdiction of the municipal court of Chicago, in which, however, it is admitted that the municipal court does not have jurisdiction of all cases cognizable in the circuit and superior courts, and while his brief is able and interesting, we would not be justified in lengthening this opinion to discuss in detail the various matters of which the municipal court is there shown to have jurisdiction. It must be conceded that the jurisdiction of the municipal court does not extend beyond the limits of the city, while the superior court of Cook county has jurisdiction throughout the county. The municipal court has no jurisdiction in felony cases nor in certain tort cases. It has no general chancery jurisdiction, though it has jurisdiction, by statute, of matters in which the proceedings are by the statute declared to be in the nature of chancery proceedings. The municipal court does not have jurisdiction to enter extraordinary writs, such as *mandamus* and the like. It seems clear that in relative rank the municipal court of Chicago is inferior to the superior court and circuit courts and that the superior court of Cook county has the power to issue writs of prohibition to the municipal court of Chicago in proper cases.

The question next presented is whether the superior court erred in refusing to issue such writ in the case before us. This, in turn, depends in the first instance on

whether the municipal court had jurisdiction of the subject matter involved in the contempt proceedings. As we have seen, the object of a writ of prohibition is to remove the subject matter from the lower to the higher court, not for the purpose of procuring a decision on the merits of the case before the inferior court, but to restrain that court from further prosecution of the original proceeding when it has no jurisdiction of the subject matter thereof or where it exceeds the jurisdiction conferred on it. A writ of prohibition is in no sense a writ of review. (*People* v. *Circuit Court of Washington County, supra; People* v. *Circuit Court of Cook County, supra.*) Did the municipal court have jurisdiction of the subject matter of the information filed by *amicus curiæ?*

Disregarding the fact that Swedberg's petition, purporting to be a petition in the nature of a writ of error *coram nobis,* was not sufficient to entitle him to a review of his sentence, it seems beyond the realm of debate that the municipal court had no jurisdiction to hear the information filed by *amicus curiæ* against these petitioners. It was wholly immaterial in the case against Swedberg whether these petitioners procured him to falsely swear that he owned the automobile he was driving at the time of the injury out of which the charge against him grew, since no such issue arose in the case against him. Section 41*a* of the Motor Vehicle act, under which he was charged, declares the driver of the automobile guilty in such a case regardless of the ownership of the car. One may not be charged with obstructing justice when the act complained of cannot have that effect. Where such a situation is shown on the face of the information, as here, no jurisdiction was conferred to investigate a charge of obstructing justice. Jurisdiction is not only power to consider the subject matter, but it likewise involves the power to enter the order complained of. *People* v. *Circuit Court of Washington County, supra.*

Even though the municipal court possessed jurisdiction to investigate the alleged act of these petitioners concerning the testimony of Swedberg, it is obvious from the information itself that it conferred no jurisdiction on that court, nor on Judge Green, to enter upon an investigation in an attempt to uncover facts which could not by the most fanciful stretch of imagination bear any relation whatever to the question of obstructing justice in the proceeding before that court. The acceptance by Judge Green of the *amicus curiæ* information, and his public statement, as shown by the petition filed herein and admitted by the demurrer, that he proposed to conduct a thorough investigation of all matters relating to the taxicab business in the city of Chicago, the alleged monopolies relating thereto and alleged violations of State and Federal statutes in relation to the restraint of trade, and the alleged difficulties concerning wages of the drivers of the Checker Taxicab Company; that he intended to have *subpœnaes duces tecum* issued for the books of certain taxicab companies, and that he would strike any answers filed by these petitioners to the Roach information, were entirely without the jurisdiction of the court. Judge Green had no more jurisdiction to enter upon such an investigation as to matters that could not affect the question before him on the Swedberg petition than he had to investigate the price of milk in that proceeding. It would be lamentable, indeed, if courts of superior jurisdiction were impotent to prevent such flagrant misuse of judicial power.

The judgment of the Appellate Court is right and is affirmed.                          *Judgment affirmed.*