THE PEOPLE EX REL. GEORGE F. ROBISON, PROSECUTING ATTORNEY OF WAYNE COUNTY v. GEORGE S. SWIFT, JUDGE OF THE RECORDER'S COURT OF THE CITY OF DETROIT.

*Attorney-General should generally represent the People in the Supreme Court —Prosecuting Attorney's application to set the lower court in motion will be heard—Proceedings in a criminal case quashing an indictment may be reviewed—Mandamus is the proper writ—Recorder's court of the city of Detroit—Cannot inquire into constitution of grand jury—Indictments, valid on their face, must be acted upon—Not usual to quash same for defects reviewable on error—How. Stat. §§ 9241, 9242 apply to municipal as well as State officers—Detroit charter—Provisions mitigating punishment of offenses, covered by sections cited, and providing special procedure in Recorder's Court, invalid—Recorder must try the indictments sent from the Circuit Court, according to general criminal laws.*

1. As a general rule, the Attorney-General should represent the people in the Supreme Court, but there is no rule of law preventing that court considering an application by the prosecuting attorney of a county,

to set a court in motion to proceed in a case under his control therein. When the case is finally disposed of below, its removal, for review, belongs to the Attorney-General;[1] but while still pending in the lower court, and relief is sought in the appellate court, ancillary to it, it is not improper to hear the prosecuting attorney, reserving the power, if deemed necessary, to call in the Attorney-General.

2. While, under the common law and our constitution, no writ of error or other proceeding lies on behalf of the people, to review a judgment of acquittal in a criminal case, there is no rule of law to prevent the review, in the Supreme Court, of proceedings which have not gone to trial.

3. It is well settled that a decision quashing an indictment, may be reviewed, the only question being what is the better form of review; in such a case, mandamus is the more appropriate writ.

4. The Recorder's Court of the City of Detroit must take indictments sent to it from the Circuit Court of Wayne County, as valid, if upon their face they appear to be so, and it has no power to inquire into the constitution of the grand jury finding such indictments.

5. It is not usually considered proper to quash indictments, on motion of respondents, in cases of any importance, for defects reviewable on error.

6. Sections 9241 and 9242, How. Stat., punishing bribery in the case of "any executive, legislative or judicial officer," apply as well to municipal, as to State officers, the character of whose duties falls within any of those definitions, and a construction which would take cities and other public corporations out of the protection of these laws, would be dangerous and unnatural.

7. The provisions in the charter of the city of Detroit providing for a mitigated punishment of the offenses covered by sections 9241 and 9242, How. Stat., as municipal grievances, and for a special procedure, in the Recorder's Court, are invalid, and it is the duty of the recorder to entertain and try the pending cases, under the indictments sent to him by the Circuit Court, in accordance with the *general* criminal laws.

---

[1] Act 72 Public Acts of 1887, which took effect April 15, 1887, makes it the duty of the prosecuting attorney of the county from whence any criminal case is removed, by appeal or otherwise, to appear on behalf of the people in the Supreme Court, and with the advice and assistance of the Attorney-General, to conduct such cause in such court. For such services he is to receive a reasonable compensation, including his expenses in traveling to and from and on his attendance in such court, to be ascertained and determined by the Board of State Auditors, and paid by the State. The expense of printing any brief or argument prepared in such case, is to be paid by the county from whence the case was removed.

Mandamus. Heard January 26, 1886. Granted February 3, 1886.

On August 12, 1885, indictments were presented to the Wayne County Circuit Court, by a grand jury, against two of the aldermen of the city of Detroit, for accepting and soliciting bribes in violation of sections 9241 and 9242, How. Stat. Said indictments were transferred to the Recorder's Court of said city, under a provision of its charter, for trial, and such proceedings were thereafter had as resulted in a motion by the respondents to quash the indictments for several reasons, and among them the following:

"Because the said indictment, on its face, charges, if anything, an offense which, by section 13 of chapter 4 of title 1 of an act of the Legislature of the State of Michigan, approved June 7, 1883, entitled 'An act to provide a charter for the city of Detroit and to repeal all acts and parts of acts inconsistent therewith,' is made a *misdemeanor*, and is, by section 22, of chapter 12 of said title 1 of said act, to be prosecuted by filing with the clerk of this court a sworn complaint; and yet, on the face of said indictment, it appears that said offense is prosecuted, as a *felony*, under section 9242, How. Stat. in the Circuit Court for Wayne County, by the finding of a grand jury in said court."

It was also objected that the grand jury, presenting the indictments, was not legally constituted.

Judge Swift, of the Recorder's Court, in a written opinion, reviewed the case, and after finding that section 13 of chapter 4 of title 1 of the Detroit city charter of 1883, covered substantially the same offenses as How. Stat., §§ 9241 and 9242, but reduced the grade of the offense from felony to a misdemeanor, and provided a much milder punishment in case of conviction; and further, that the Recorder's Court was vested with exclusive jurisdiction of all offenses under the charter, which provided a different method of procedure in the prosecution of such offenses in said court, granted respondent's motion, on the ground, that, for the reason stated, the grand jury had no jurisdiction or power to inquire into the commission of the offenses, charged in the indictments, and discharged the respondents from custody.

Thereupon the prosecuting attorney of Wayne County applied for a writ of *procedendo* or *mandamus* commanding Judge Swift to vacate his order quashing said indictments, and to take cognizance thereof and proceed with the trial of respondents thereon, according to the usual course and practice of the Recorder's Court.

Judge Swift's answer to the usual order to show cause admitted the material facts alleged in the relator's petition, but submitted :

1. That said prosecuting attorney was without power or authority to appear in the Supreme Court, on behalf of the people of the State, in said matter; and,

2. That by law, the writ of mandamus is not maintainable on behalf of the people to review the orders complained of.

3. For the reason mentioned in his written opinion, herein before set forth.

Upon the final hearing the Recorder was ordered to entertain and try the cases, under the indictments, in accordance with the general criminal laws. The remaining facts are sufficiently stated in the opinion.

*George F. Robison* and *F. A. Baker*, for relator:

The prosecuting attorney is a proper relator. It is his duty to appear for the people in all criminal prosecutions in his county, How. Stat. § 551; and the object of this application is to compel such a prosecution to be proceeded with. He is a constitutional officer, *Allor v. Auditors*, 43 Mich. 76, and the effect of the decision of the recorder is to deprive him of the power and authority to conduct the prosecution of these cases. Upon this ground, alone, he is a proper relator.

This is a typical case for the issuing of a writ of mandamus. The constitution expressly provides that the Supreme Court "shall have a general, superintending control over all inferior courts, and shall have power to issue writs of error, *habeas corpus*, mandamus  *  *  *  and other original and remedial writs, and to hear and determine the same." Art. 6, § 3; the jurisdiction of the court is of the same nature as that of the King's Bench in England; 3 Blackstone's Com. 41. As to the use made of writ by the K. B., see *Ib*. 110. This writ issues to inferior courts to

compel them to exercise jurisdiction where they have erroneously refused to do so: Tapping on Mandamus, page 105. "Where one is to act according to his discretion, and he will not act nor even consider the matter, the court of B. R. will, by mandamus, command him to put himself in motion to do it:" *Rex v. North Riding*, 2 B. & C. 291; *Rex v. Mills*, 2 B. & Ad. 578; *Rex v. Holbeche*, 4 T. R. 779. "Thus, if justices reject an application in the exercise of the discretion vested in them by the legislature, the court of B. R. will not interfere, but if they reject it on the ground that they have *no power* to grant it, the court will interfere, so far as to set the jurisdiction of the magistrates in motion by directing them to hear and determine upon the application": *Rex v. Kent*, 14 East. 396. On this same point, see *Rex v. Cumberland*, 1 M. & S. 192–4; *Rex v. Cumberland*, 4 A. & E. 695; *Rex v. Tod*, Stra. 530; *Rex v. Jukes*, 8 T. R. 625. "And the court of B. R. has repeatedly held, that it is not precluded from inquiring whether the Quarter Sessions have decided rightly, upon any preliminary point, necessary to determine their own jurisdiction:" *Rex v. West Riding*, 3 P. & D. 462; *Rex v. Staffordshire*, 4 A. & E. 842; *Rex v. West Riding*, 5 B. & Ad. 667. The same principles govern the writ in this country: High on Ex. Rem., page 123. It is an elementary rule, that a writ of mandamus may be used to require an inferior court to decide a matter, within its jurisdiction and pending before it for judicial determination, but not to control the decision: *Ex parte Morgan*, 114 U. S., 174, citing *Ex parte Flippin*, 94 U. S., 350; *Ex parte Railway Co.*, 101 U. S. 720; *Ex parte Burtis*, 103 U. S. 238. Also *Harrington v. Holler*, 111 U. S. 796; *Ex parte Bradstreet*, 7 Pet. 634; *Ib. Newman*, 14 Wall. 152, 165; *Virginia v. Rives*, 100 U. S. 323. In *Insurance Co. v. Comstock*, 16 Wall. 258, a U. S. Circuit Court dismissed a writ of error to the District Court in a bankruptcy proceeding, because it supposed it had no jurisdiction to issue the writ, and the U. S. Supreme Court held that it had power to issue a mandamus, in the exercise of its appellate jurisdiction, and that the writ will lie in a proper case to direct a subordinate Federal court to decide a pending cause, citing *Marbury v. Madison*, 1 Cranch, 175; *Kendall v. U. S.* 12 Pet. 622; *Ex parte Bradstreet*, 7 Pet. 647, and in *Railroad Co. v. Wisall*, 23 Wall. 507, the court held that where a U. S. Circuit Court erroneously remands a case removed to it from the State court, the remedy is by mandamus to compel action.

·The jurisdiction of this Court, to issue a writ of mandamus, in cases like the one at bar, has been repeatedly recognized by the court, and in one case expressly adjudicated. In *McBride v. Common Council of Grand Rapids*, 32 Mich. 360–4, the general nature of the writ was considered, and this Court has frequently held that mandamus is a proper remedy to compel a court to restore an appeal erroneously dismissed : *Plank Road Co. v. Wayne Circuit Judge*, 27 Mich. 303; *Comstock v. Ib.*, 30 Mich. 98; *Cheever v. Washtenaw Circuit Judge*, 45 Mich. 6; and it has been granted to vacate an order quashing an attachment : *Miller v. Bay Circuit Judge*, 41 Mich. 326, and to compel a circuit court commissioner to proceed, on an order of reference where he held that the reference was not cognizable by him : *Warner v. Randall*, 37 Mich. 473. The provisions of the Detroit City Charter, of 1883, prescribing the method of commencing prosecutions for offenses' thereunder, or any ordinance or regulation of the common council, are unconstitutional. The procedure is very simple. A complaint, in the form of an affidavit, and containing the substance of an offense must be sworn to before, and filed with, the clerk of the recorder's court, who issues a summons for the accused to appear at a certain time. On his failure so to do the clerk, upon the request of the city attorney, endorsed on the complaint, or the order of the court or judge, issues a warrant for his arrest, and commitment to the county jail, unless he enters into a recognizance to appear in such sum as the court may direct. A warrant may be issued, in the first instance, if it is alleged in the complaint that there is danger of respondent's escape beyond the reach of the process of the court. This procedure is defective, in this.

No showing of probable cause, or a judicial determination of its existence, is required or contemplated, and if it was, neither the clerk or city attorney can exercise any such power : State Constitution, Art. 6, §§ 26 and 32; *Allor v. Auditors*, 43 Mich. 97; *Drennan v. People*, 10 Mich. 169; *Quinn v. Heisel*, 40 Mich. 576; *Sarah Way's Case*, 41 Mich. 299; *Swart v. Kimball*, 43 Mich. 443.

The city attorney represents the city in prosecutions under the ordinances, but he has no authority to represent the people of the State in criminal prosecutions, even in cases where the offense is created by the city charter. That duty belongs to the prosecuting attorney, who is a constitutional officer and whose duties cannot be transferred to another : Art. 10, Cont. § 3; *Allor v. Auditors*, 43 Mich. 76. The clause,

authorizing the city attorney to order the clerk to issue warrants, renders it clear that the section was only intended to apply to prosecutions under the ordinances, or where the city occupies the position of party litigant, and when the city is in that position, its attorney cannot be permitted to control or influence the determination of the questions to be decided : *Paul v. Detroit*, 32 Mich. 108, 117. But, are the clerk and attorney judicial officers, or conservators of the peace, and therefore proper officials to determine questions of probable cause? Sections 1 and 19 of Art. 6 of the Const. vest the judicial power in the Supreme, circuit and probate courts ; in justices of the peace and in such municipal courts of civil and criminal jurisdiction as may be established by the Legislature, in cities, and provides that the judges of said courts, and justices of the peace, shall be conservators of the peace within their respective jurisdictions. An act conferring certain judicial powers on notaries public, was held unconstitutional in *Chandler v. Nash*, 5 Mich. 409, and upon the same principle, the jurisdiction of circuit court commissioners is limited to such powers as do not exceed those of a circuit judge at Chambers : Const. Art. 6 § 16 ; *Rowe v. Rowe*, 28 Mich. 353.

Again, the section of the charter providing a milder punishment, for bribing a member of the common council of the city of Detroit, than that prescribed for bribing other officials, or members of the common councils of other cities, is unconstitutional :

1. Amendments or modifications of the general criminal statutes, are not germane to a city charter, and not within the title of an act to provide a charter for a city.

2. The section, in question, is a suspension of a general law of the State, in the interest or for the benefit of a particular class of individuals, and they in one locality. The effect is the same as though the general bribery statutes [§§ 9241 and 9242 How. Stat.] contained a proviso limiting the punishment for their violation, by a member of the common council of the city of Detroit, to one year's imprisonment in the State prison and a fine of one thousand dollars. Such legislation violates the constitutional provision that no man shall be deprived of life, liberty or property, except by due process of law, or as is frequently expressed " by the law of the land " : Cooley's Const Lim., pp. 351, 391 ; *Holden v. James*, 11 Mass. 396 ; *Bull v. Conroe*, 13 Wis. 233–8 ; *Simonds v. Simonds*, 103 Mass. 572 ; *Lewis v. Webb*, 3 Greenl. (Maine) 326, 336 ; *Durham v. Lewiston*, 4 Ib. 140 ; *Picquet Appel-*

*lant, etc.*, 5 Pick. 64; *Budd v. State*, 3 Humph. 483; *Wally's Heirs v. Kennedy*, 2 Yerg. 554; *Officer v. Young*, 5 Yerg. 320; *Griffin's Ex'or v. Cunningham*, 20 Grat. 31; *Arnold v. Kelley*, 5 W.Va. 446. Again, the offenses charged are within secs. 9241 and 9242 of How. Stat. punishing the bribery of, or acceptance of a bribe, by " any executive, legislative or judicial officer."

These sections have been in force ever since 1838: Rev. Stat. 639, 640, and cover all cases of bribery of persons who occupy positions of public trust and are known as " officers." All officers are either legislative, executive or judicial, because the government is divided into such branches or departments, and persons belonging to one cannot exercise powers properly belonging to another: Art. 3, Const. That these words were intended to include all officers, is shown by How. Stat. §§ 9243 and 9244, which, as originally enacted, [§§ 10 and 11 chap. 6 Rev. Stat. 1838] relate to the bribery of " any master in chancery [now circuit court commissioner, public acts 1875, page 152], auditor, juror, arbitrator, umpire or referee." Now, referees, arbitrators, jurors and auditors, are not officers, nor required to take the constitutional oath: *Underwood v. McDuffy*, 15 Mich. 361. No one will pretend that an alderman, or a councilman, is not an " officer" in the full legal sense and they are legislative officers: *People v. Hurlbut*, 24 Mich. 44; *Park Com. v. Com. Council*, 28 Mich. 228; *Atty. Gen. v. Ib.*, 29 Mich. 108; *Atty. Gen. v. Board of Councilmen*, 58 Mich. 213. Art. 4 § 38 Const. authorizes the Legislature to confer upon incorporated cities and villages, *local* powers of a " legislative and administrative character," and though the bribery statutes were passed prior to the adoption of the Constitution of 1850, the authority of the Legislature to confer such power on a city or village was no less, prior to, than after such adoption. Municipalities have always exercised legislative power, and will continue to do so as long as the right of local self-government is retained by the people, and local officers, members of the local legislature, are necessarily legislative officers within the meaning of the statutes punishing bribery.

*Alfred Russell*, for respondent:

The prosecuting attorney has no standing in this court by virtue of his office. The Attorney General, alone, can invoke the writ, if any one can. No statute or practice has made it the office of this writ to review the final orders of the recorder's court. Mandamus does not lie to direct the recorder

to proceed, because he has proceeded. The people cannot review, in a criminal case, in any form, and if defendants had pleaded not guilty, and after the introduction of evidence the recorder had directed a verdict, on the same grounds urged for quashing the indictments, no review could be had by the people to set aside such verdict. How does the case, as presented, differ in principle? By the general law of 1846, bribery is made a felony justiciable by a grand jury, but by the special law of 1883, which repeals all inconsistent prior acts, this offense, committed by a city official, is made a misdemeanor, justiciable by sworn complaint in the city criminal court, and warrant thereupon directed by the city attorney, recorder, or recorder's court. This sworn complaint satisfies the constitutional requirement of a showing of probable cause; the clerk is not authorized to issue a warrant without the direction of the city attorney, the judge or the court, and this function is administrative or executive—not judicial. As to practice in U. S. courts: *Murray's Lessee v. Hoboken, L. & I. Co.*, 18 How. 280; *Hurtado v. California*, 110 U. S. 516; *Ex parte Wilson*, 114 U. S. 417; cases cited page 425. The suggestion that the general laws of the State are superseded in a particular locality is destitute of merit. Nobody ever doubted the competency of making laws for a municipality, different from those in other localities, and such has been the custom for a quarter of a century, and this fact of user fixes their constitutionality by showing that conflict with the Constitution could not have been clear. Practice and acquiescence, in such a case, afford an "irresistible" answer: *Stuart v. Laird*, 1 Cranch. 299.

*Edwin F. Conely*, for respondent:

(The points of counsel as to the illegal composition of the grand jury are omitted, the court holding that the recorder had no power to inquire into this question.—REPORTER.)

The proceedings should have been by complaint in the recorder's court: Detroit City Charter, 1883, p. 24, § 13; Ib., p. 129, § 22. These provisions are said to be unconstitutional. If there is any doubt, the statute should be held valid: *Sears v. Cottrell*, 5 Mich. 251; *People v. Mahaney*, 13 Mich. 483; *People v. Braman*, 30 Mich. 460; *Pack v. Barton*, 47 Mich. 520; and some express constitutional provision should be pointed out: Cooley's Const. Lim., 5th ed., pp. 197, 198, 200, 201, 203, 205 and cases cited in note; *Scott v. Smith's Exr's*, 1 Mich. 295; *People v. Gallagher*,

4 Mich. 244; *Tyler v. People*, 8 Mich. 319; *People v. Mahaney*, 13 Mich. 481; *Pack v. Barton*, 47 Mich. 520. The offense of bribing, or attempting to bribe, a member of the common council of the city of Detroit, is made a misdemeanor by the charter of 1883, and is therefore "an offense under this act," which gives the council power to provide for the imprisonment in house of correction, at hard labor or otherwise, of all persons liable to be imprisoned under this act, or any act relating to the city, or any ordinance of the council: p. 72, § 54. The term, "offending against this act," as distinguished from offending against other laws, or acts, or ordinances, is often used in the charter (citing pages and sections), which further distinguishes by providing, that, "in all prosecutions for crimes, misdemeanors and offenses under the laws of this State, the court is to be governed by the general laws of the State." Charter, p. 133, § 31. And the recorder's court is given *exclusive* jurisdiction of all cases of "offenses arising under this act, or any ordinance or regulation of the common council," by means of a special proceeding to be commenced by complaint, etc. In considering the matter of the disposition of fines, imposed and collected at the central station, the Supreme Court treats the proceeding as one under the charter of 1857 itself, because the penalties are therein provided; hence the fines should be paid finally to the board of education: Charter 1857, ch. 13, §§ 10, 11, 12; *Wayne Co. v. Detroit*, 17 Mich. 390; *People v. Controller of Detroit*, 18 Mich. 445; *Mixer v. Supervisors Manistee Co.*, 26 Mich. 422; *Fennell v. Bay City*, 36 Mich. 186.

The legislative intent was to make certain acts, "offenses under this act," as distinguished from offenses under the ordinances and general laws of the State, and, as embodied in the legislative action in question, is constitutional and valid. The Legislature has not undertaken to distinguish between individuals guilty of the same criminal conduct, but makes special provision for punishing unlawful acts, in a single city, or creates a special office, and by the creative act provides for punishing misconduct therein. That special provision can be made for punishing unlawful acts, in a single city, ought not to be the subject of argument now: Cooley's Const. Lim., 5th ed., p. 481–2, note 1 (and cases last above cited); William Roberts' case, 51 Mich. 548. The office of member of the common council of the city of Detroit is a special or particular one. There is no such general office throughout the State. City officers are always special, created by special enactments defining their powers,

duties and obligations; or by a special act calling them into existence under some act defining such powers, etc. To say that the Legislature can create such a special office, and yet cannot specially provide for the punishment of misconduct therein, is absurd. The course of legislation, long continued, is otherwise. (Citing numerous acts.)

Nor is there any suspension of the general law of the State, within the meaning of the decisions, which condemn the enforcement of the law against one and not another.

Bribery statutes were adopted in 1838: R. S. 1838, pp. 639, 640; yet particular provision was made in respect to such executive officers as sheriff, constable and the like : R. S. 1838, p. 642; How. Stat., § 9255. And officers of public institutions are distinguished: How. Stat., §§ 9355, 9356. And the fact that the Legislature has provided, specially, for the cases of members of the common council, is an interpretation that its general acts only include general State officers, and this would harmonize with the letter and spirit of the constitution of 1836: Art. 3, § 1.

"Due process of law," does not mean a law of general operation : Cooley's Const. Lim., 5th ed., p. 434, 81 and 82; and the term is explained in *Wimer v. Bunbury*, 30 Mich. 201. "Probable cause," is a general term at common law, and has no special signification in the constitution. It is generally used with other language which completes the expression, as "probable cause to believe," or "to suspect," or "reasonable ground of suspicion": *Gallaway v. Burr*, 32 Mich. 332; *Hamilton v Smith*, 39 Mich. 222. Probable cause will justify a merely executive officer in making an arrest, without warrant, in cases of felony, though not supported by oath : *Drennan v. People*, 10 Mich. 169; *People v. Wilson*, 55 Mich. 506; Bishop on Crim. Pro., vol. 1, § 164. And in cases of legal arrest, without warrant, none need thereafter be issued : Ib., § 179. But when a warrant is necessary, it should be supported by the same "probable cause," but under oath. The constitution does not distinguish between warrants: Art. 6, § 26 ; and the same "probable cause" is necessary in the cases of justices' warrants and capias *ad respondendum*, and all other writs of arrest in civil cases, and in proceedings under ordinances where arrest is contemplated, supported by oath. If the charter does not require "probable cause," etc., and by the constitution is thus far invalid, the proceedings providing for ordinance cases must fall with the proceedings under the act ; but the same provision was in the charter of 1857: Laws of 1857,

p. 112, § 20; and the provision respecting bribery now criticised: Ib., p. 77, § 12; also the distinctions between offenses under the charter, ordinances and general laws of the State. These provisions, therefore, have been in force for twenty-seven years, and it is too late to question their validity, or that the proceedings provided for therein do show probable cause within the meaning of the constitution: *People v. Hurst,* 41 Mich. 328. The history of criminal law, in England and America, shows, that the methods of conserving the peace, of apprehending persons, of holding them to bail and for trial, or examination by the grand jury, have been within the full control of the State, and that it might lodge this power wherever it pleased, though under our system some officers are constitutional conservators, and cannot be divested of their powers: *People v. Mahaney,* 13 Mich. 481; *Allor v Auditors,* 43 Mich. 76. There is, therefore, no constitutional reason against vesting, in the recorder's court, the power to receive complaints and issue warrants.

CAMPBELL, C. J. This is an application to compel the judge of the recorder's court to proceed to the trial of certain indictments for bribery, found in the circuit court for the county of Wayne, and quashed by respondent for want of jurisdiction.

It is opposed on several grounds, the material of which were:

1. That this court cannot proceed on relator's representation, or at all, to review respondent's action in this way;

2. That the indictments were found by an unlawful grand jury;

3. That the offenses charged are, under the charter of Detroit, only to be prosecuted under the city charter, in the way there pointed out, and with the penalties there prescribed.

All other questions are subordinate.

It is a general rule that the attorney general should represent the people in this Court; but, while we should require this, in most cases, there is no rule of law, that we are aware of, which would prevent our considering an application by the prosecuting attorney to set a court in motion to proceed in a case which is under the control, there, of that officer.

When the case is finally disposed of below, the removal of it for review belongs to the attorney general; but where the case is still pending below, and relief is sought here ancillary to it, we think it not improper to hear the prosecuting attorney, reserving the power, if deemed necessary, to call in the attorney general.

Whether mandamus will lie depends, in our opinion, on whether the action of the court below in quashing the indictments is final and beyond review. Under the constitution of this State this Court is given general superintending control over all inferior courts, with power to issue all the various classes of original and remedial writs, including writs of error, mandamus, procedendo, etc. The writ of procedendo has been practically superseded for many years by the writ of mandamus, and we are not aware of any example of its use in this State. There are also cases where there may, perhaps, be a choice of methods of procedure.

Under the common law, and under our constitutions, no writ of error or other proceeding lies, on behalf of the public, to review a judgment of acquittal in a criminal case, as no one can be twice put in jeopardy; but there is no rule of law to prevent the review of proceedings which have not gone to a trial. It is very well settled that a decision quashing an indictment may be reviewed. The only question has been, what is the better form of review? In *Regina v. Wilson*, 6 Q. B. 620, it was held that certiorari was not the proper writ, and that writ of error was. But the certiorari used in that case was one merely going to the jurisdiction of the quarter sessions to hear a motion to quash; and as the indictment was found there, it was held there might be power to quash, and the judgment, having been rendered over a matter within the jurisdiction, was held more properly removable by writ of error.

There is, however, a serious objection to the writ of error for such a purpose under our practice : that it involves delay, and does not lead as readily as a mandamus to a trial on the merits, which public policy requires should not be unduly delayed ; and in cases where the refusal of the inferior court

to entertain a case is for some supposed want of jurisdiction, a mandamus has been usually regarded as more appropriate, although the lines are not closely drawn. In *Queen v. Justices of Middlesex*, 2 Q. B. Div. 516, the office of a mandamus to set an inferior court in motion was recognized as applicable, where it has refused to entertain jurisdiction on some matter preliminary to a hearing on the merits, and would reach just such a case as this. Other cases cited on the argument are also in point; and, in *Attorney General v. Police Justice*, 40 Mich. 631, we ourselves issued a mandamus to compel the police justice of Detroit to entertain a complaint. See, also, *King v. Mawbey*, 6 Term. R. 628; *Reg. v. Adamson*, 1 Q. B. Div. 201. Judgment on a writ of error, in such a case, would merely vacate the order to quash, and while, no doubt, the recorder's court would in such case proceed, yet the real purpose of this application is to speed the trial, and a mandamus seems more fitting than a writ of error where that duty would be inferred rather than expressed. The duty of an appellate court is to mould its process, if possible, so as to reach the proper end, and we have no doubt a mandamus is better than any other writ in a case like the present, where there has been no action below on the merits.

As the court below quashed the indictments for want of jurisdiction to entertain them, the defect set up in the formation of the grand jury was not the basis of its decision; but as, if tenable, it might properly answer this application, we should perhaps not pass it by entirely. In our opinion, it appears sufficiently that the grand juror, actually appearing as William Stoflet, was the person really meant to be summoned, and was lawfully sworn. We do not, however, see how this question should have been entertained by the recorder. The indictment was found in another court of constitutional jurisdiction, broader than that of the recorder's court, and not in any respect a court of inferior jurisdiction. The inquiry into the constitution of its grand jury involves a power of supervision which is not and cannot be given to the recorder's court, which must take the indict-

ments sent to it from the circuit court as valid, if, upon their face, they appear to be valid. It is very questionable whether such an objection could be made by motion and on affidavits at all; but, as the point is not well taken on the facts, we need not consider it further.

No objection is pointed out to the sufficiency of any of the indictments if they come within the statutes at all, and it is not usually considered proper to quash indictments on motion of respondents, in cases of any importance, for defects that can be reviewed on error. Archb. 64. We see no reason for doubting their sufficiency, if proper at all.

But it is claimed that the general statutes against bribery do not cover municipal officers, and that the charter furnishes the only rule of prosecution and punishment, and further, that if the State law ever covered them it has ceased to do so.

By sections 9241 and 9242 of How. Stat. provision is made for the punishment of bribery in the case of " any executive, legislative or judicial officer." Succeeding sections reach the cases of circuit court commissioners, auditors, jurors, arbitrators, and referees. The cases of electors is also covered, and expressly applies to all general, special, township, or charter elections. Chapter 325, How. Stat. All of these provisions go back to the early stages of state government. More recent statutes apply to the officers of public institutions.

Until the charter of Detroit of 1857, unless these statutes reached municipal officers, there was no statute that covered them. If we take the language of some of the text-books, including Blackstone, we might suppose that the common law made no bribery punishable but that of judges. But there is no doubt this was never law. Archb. 580; 2 Bish. Crim. Law, § 85, and notes. In *Rex v. Vaughan*, 4 Burr. 2494, it was held, after solemn argument, that it was an offense at common law to commit bribery in regard to the procurement of an office granted in England, although to be exercised in a colony; and in aid of this view, Lord Mansfield refers to the case of *Rex v. Plympton*, 2 Ld. Raym. 1377,

which was bribery of a corporator voting for the mayor of a corporation.

It was evidently the purpose of the revisers of 1838 and 1846 to substitute statutory punishment for the common-law offenses as far as possible. It would have been a very strange rule that the bribery of a voter, in a municipality, should be punished so severely if it was no offense to bribe the municipal authorities. If the terms "executive,. legislative and judicial," do not reach municipal officers exercising such functions, no very good reason can be found for not confining the words to officers of state, as was claimed by counsel, which would leave county as well as town officers outside of the law. The words apply, in our opinion, just as well to local as to state functionaries, the character of whose duties falls within any of those definitions. Under our system of local self-government, there is no public corporation that has not an organic connection with the State, or which does not require guarding to promote the interest of the whole body politic. Most, if not all of them have duties to perform directly for the State. A construction which would take cities and other public corporations out of the protection of these laws would be a dangerous and not a natural one.

The question then arises whether the fact, that, by the charters of 1857 and 1883, special punishments much lighter than those under the general laws are applied to the bribery of city officials, indicates the repeal, to that extent of the general laws, under the well-known rule that the creation of a smaller penalty supersedes the larger one.

It is claimed, on behalf of the people, that it is not competent for the Legislature to pass discriminating penal laws which shall make the same offense punishable in different degrees in different places ; and that, as all crimes are punishable under the laws of the land, and not as such by municipal action, so it is contrary to the constitutional rules of right to discriminate. It is not disputed that there may be occasion, in regulating cities, to create new crimes not likely to be dangerous elsewhere; but the contention is that the general laws of the State must have uniform operation.

There is much force in this position. In the view we take of the charter it is not, however, important.

The charter of 1857, which was the first of those long and complicated attempts to cover everything, which have made so much mischief and confusion in our city codes, was manifestly prepared with an idea that it was possible to put cities on a footing like that of counties palatine, where crimes, as well as local disorders, were treated as offenses against the local sovereignty, and not against the State. The intention of its framers, which must be deemed to have been the intention of the Legislature which adopted their scheme, was evidently not to change the general laws, so far as the State saw fit to enforce them, but to allow the municipality, without the interference of the State, to deal with certain wrongs as local grievances. That this was so will appear in various ways. In the first place, it is not in the power of the recorder's court to deal with any criminal acts not committed within the city of Detroit; and under both charters the offenses now under consideration, as punishable under the charters, were cognizable in the recorder's court, which would lead to the anomaly that the same act done outside of the city would not be a charter offense, while if within the city, it would be, and would not be so heinous. This, however, is a minor consideration.

By comparing the various provisions of these two charters it will be seen that every offense to which the charter affixed a punishment was made to inure, if a fine or penalty was imposed, to the benefit of the city treasury, and not to the library fund: Charter of 1857, c. 6, § 25; Charter of 1883, c. 12, § 25. By the charter of 1857 all prosecutions for offenses arising "under the laws of this State" were required to be prosecuted by indictment or information under the general laws, and by the prosecuting attorney; while all prosecutions under the charter, or under the city ordinances, were to be commenced by a different form of sworn complaint, and under the supervision of the city attorney. Chapter 6, §§ 5 to 14, 20 to 15. The charter of 1883 makes the same discriminations, but gives to the clerk power to issue

warrants, which was not clearly, if at all, indicated by the old charter: Charter of 1883, *c.* 12, §§ 12, 13, 16, 21.

A still more important indication is found in both charters, when they provide that, for all violations of the charter to which no express punishment is attached, the common council may provide for punishment by fines, penalties, forfeitures and imprisonment: Charter of 1883, *c.* 7, § 54; Charter of 1857, *c,* 5, § 21, subd. 66. Provision is also made that imprisonment shall be in the house of correction, where enforced labor appears to come within the constitutional provisions referring to crimes: Article 18, § 11.

Nothing is more elementary than that a crime can only be punished, as such, under the law of the land. But whoever drew up that charter had it in mind that the violation of a State law might be punished criminally, on its own behalf by the city, and such was the construction placed by the city authorities upon the old charter for many years, until the public authorities intervened, to compel the city to pay over all moneys collected for violations of the charter into the library fund, as crimes, and not as local wrongs: *Wayne Co. v. Detroit,* 17 Mich. 390; *People · v. Controller,* 18 Mich. 445. Those decisions, as well as some others in regard to unlawful arrests, seem to have escaped the notice of the compilers of the charter of 1883, where the old mistakes are perpetuated and aggravated.

We are satisfied that these mitigated provisions were not introduced into the charter with any idea of changing State prosecutions or punishments, but under the erroneous notion that they created municipal grievances which no one was interested in but the city. No such proposition is maintainable, and these provisions are invalid for that reason, and for the further reason that the only way provided for enforcing them is in direct violation of the constitution, which makes prosecuting attorneys, whose functions were already understood, necessary officers in every county, and which allows no one to be arrested without due process of law.

It has already been decided that no arrest can be lawfully made without warrant, except in the cases existing at common

law before our constitution was adopted: *People v. Moore*, 2 Doug. 1; *Quinn v. Heisel*, 40 Mich. 576; *Sarah Way's Case*, 41 Mich. 299. No warrant can issue under the constitution "without probable cause, supported by oath or affirmation:" Article 6, § 26.

It was never lawful for any one to determine this in a criminal case, unless upon inquest, or by the action of a court, judge, or justice of the peace, or person exercising his functions. It is one of the most important functions that can be exercised under the law. In this State, circuit court commissioners exercise the powers of a judge at chambers, but this is under warrant of the constitution itself. Even where an indictment has been found, if the defendant is not in custody, the clerk of a court has no power to issue process of arrest, but the law is express that a warrant may be issued by the court to which the indictment shall be presented or by a justice of the Supreme Court, or judge of the court for the county where the indictment is found; "but such warrant shall not be issued by any other officer:" How. Stat. § 9513. In *Thompson v. Ellsworth*, 39 Mich. 719, where an order was made enforceable by attachment in case of default, it was held that an attachment issued by the register, without the direct order of the court itself, was void. A clerk cannot exercise any judicial power over criminals. This charter makes him, and not the recorder, authorized to issue warrants on complaint, and makes the city attorney, instead of the prosecuting attorney, manager of the prosecution of all violations of the charter provisions. These provisions all depend on each other, and cannot be enforced.

Some stress was laid on what is said to have been practical construction. We are not aware of any case ever brought into this Court, based on violation of the Detroit charter, and prosecuted to enforce its penalties directly, in which the record raised any such question. It would be contrary to all justice to allow either the State, or persons charged with offenses, to be estopped by the neglect of individuals to insist on such defenses as the law gives them; and constitutional provisions which, in criminal cases, concern the welfare of

the State quite as much as they do private persons, cannot be destroyed by any such laxity of practice.

We think the indictments are valid under the laws of the State, and are not affected by any charter provision, and that the recorder should be directed to entertain and try the cases under the indictments, in accordance with the general criminal laws.

The other Justices concurred.