## The City of Grand Rapids v. Max Braudy.

*Criminal law—Acquittal—Certiorari—Pawnbrokers—Police power—Validity of ordinance.*

1. The action of the court in refusing to proceed with the trial of an appeal from a conviction in police court for the violation of a city ordinance, and the quashing of the proceedings on the ground that the ordinance is invalid, does not amount to an acquittal, there having been no trial on the merits.

2. While *mandamus* may be the more appropriate remedy by which to compel the court to proceed to the trial of said appeal, the same result is reached by *certiorari*, which has been held the proper remedy to review convictions for violations of city ordinances; citing *Swift v. Circuit Judges*, 64 Mich. 487; *People v. White*, 53 Id. 537.

3. The business of pawnbroker, junk dealer, or dealer in second-hand goods and merchandise, comes expressly within the control of the police power of the State, and, while legitimate in the absence of any statute law controlling it, no inalienable right exists to carry it on without complying with those provisions and restrictions which the legislative power of the State has seen fit to require.

4. The following provisions of a city ordinance licensing and regulating pawnbrokers, junk dealers, and dealers in second-

hand goods, are not so unreasonable as to invalidate the ordinance:

a—Requiring the payment by a pawnbroker of a license fee of $50 per annum, and the execution of a bond in the penal sum of $5,000, and the payment by the other persons named in the ordinance of a fee of $25, and the execution of a bond in a penalty of $2,000.

b—Prohibiting the licensee from purchasing or taking any goods, articles, or things offered him from any person under the age of 16 years, or from any intoxicated person or habitual drunkard.

c—Reserving in the license the power of revocation at any time by the common council, for such time as they shall have prescribed therefor.

*Certiorari* to superior court of Grand Rapids. (Burlingame, J.) Submitted April 30, 1895. Decided July 2, 1895.

Respondent was complained of for the violation of an ordinance regulating the business of pawnbrokers, junk dealers, etc. The city brings *certiorari* to review proceedings resulting in his discharge. Order reversed, and court directed to proceed with the trial. The facts are stated in the opinion.

*Henry J. Felker* and *Harvey Joslin*, for the city.

*Frank A. Rodgers*, for respondent.

GRANT, J. The defendant was convicted of engaging in the business of junk dealer in the city of Grand Rapids without having procured a license therefor from the common council, contrary to the provisions of "An ordinance relative to licensing and regulating pawnbrokers, junk dealers, and dealers in second-hand goods." The trial and conviction were had in the police court of the city. He thereupon appealed the case to the superior court of the city. The superior court, upon motion of the defendant, quashed the complaint and warrant upon the ground that the provisions of the ordinance, particularly those

of sections 7, 8, and 11, were unreasonable, and in restraint of trade. The entire ordinance is as follows:

"Section 1. No person shall engage in the business of pawnbroker, junk dealer, or dealer in second-hand goods and merchandise, except furniture, in the city of Grand Rapids, without a license therefor from the common council of said city.

"Sec. 2. Every person, and all persons, desiring to engage in the business o f pawnbrokerage or junk dealing in said city of Grand Rapids, or in the business of dealing in second-hand goods and merchandise, except furniture, in said city, shall make application in writing to said common council, specifying (as near as may be) the street and building in which he, she, or they intend to carry on said business, signed by at least twelve freeholders, citizens of said city, of good reputation, certifying to the good reputation, fair fame, and moral character of the applicant or applicants.

"Sec. 3. After such application shall be granted, and before a license shall be issued thereon, pawnbrokers shall execute a bond to the city of Grand Rapids in the penal sum of $5,000, and junk dealers and other persons included in this ordinance shall execute a bond to said city in the penal sum of $2,000, with one or more sufficient securities, to be approved by the mayor, conditioned that he, she, or they will in all respects comply with and faithfully observe all the requirements of the charter and ordinances of the city of Grand Rapids relative to pawnbrokers, junk dealers, and dealers in second-hand goods and merchandise, except furniture. And the said pawnbrokers shall also pay into the treasury of said city the sum of $50 per annum, and the junk dealers and second-hand dealers shall pay into the treasury of said city the sum of $25 per annum, as a license fee, before such license shall be issued.

"Sec. 4. Whenever said common council shall have determined to grant a license to such applicant or applicants, and upon the presental to the clerk of said city of the bond hereinbefore provided for, and the receipt of the treasurer of said city for the license fee, the said clerk shall issue to the said person or persons a license under the seal of the city, in which it shall be stated that the same is revocable at any time by the common council of said city for such time as the said common council shall have prescribed therefor; but before receiving such

license such applicant or applicants shall pay to said clerk, as a fee for issuing and recording the same, the sum of one dollar, and before the said clerk shall issue any such license he shall record the same in a book to be provided for such purpose.

"Sec. 5. No person or persons, licensed as a pawn-broker, a junk dealer, or as a dealer in second-hand goods or merchandise, except furniture, shall by virtue of one license keep more than one house, shop, or place for such business of pawnbroker, junk dealer, or dealer in second-hand goods, except furniture; provided, however, that such person or persons may remove from one place of business to another in said city by giving immediate written notice of such removal to the chief of police of said city, and of the building (as near as may be) and of the street to which removal is made.

"Sec. 6. Every person or firm licensed under this ordinance shall cause his or her name or their firm name (as the case may be), with the words 'licensed pawnbroker,' 'licensed junk dealer,' or 'licensed dealer in second hand goods and merchandise (as the case may be), to be printed or painted, in large legible characters, and placed over the outside or door or entrance of his, her, or their shop, office, or place of business.

"Sec. 7. Every person, or firm of persons, licensed to carry on either of said businesses in said city, shall keep a book, in which shall be legibly written in ink, at the time of the purchase or taking of any goods, article, or thing, an accurate account and description, in the English language, of the goods, article, or other thing purchased or pledged, the amount of money paid therefor, the time of purchasing or taking the same, the name and residence of the person selling or pledging such goods, article, or thing, and a description of the person or persons (as near as may be) from whom the same were purchased or taken. And, when any watch is purchased or taken, the person or firm of persons so licensed shall also write in such book the name of the maker thereof and its number; and when jewelry or gold or silver articles of any kind are purchased or taken, he, she, or they shall note, in said book, all letters or marks described, engraved, or cut thereon.

"Sec. 8. That it shall be the duty of every person or firm of persons aforesaid to make out and deliver to the

chief of police of said city, every day before the hour of 12 o'clock noon, a legible and correct copy from the book required in section 7 hereof, giving an accurate account and description of each and all of the articles and things purchased or taken during the preceding day, the price paid therefor, the precise time of purchase or taking, the name and residence of the person or persons from whom such purchases were made, and a description of the person or persons (as near as may be) from whom purchased or taken.

"Sec. 9. The book provided for in section 7 of this ordinance shall at all reasonable times be open to the inspection of the mayor of said city, or of the chief of police, or any member of the police force thereunto authorized by the said chief of police.

"Sec. 10. It shall be the duty of every person or firm of persons, liensed as aforesaid, upon his, her, or them (as the case may be) receiving information or learning that any goods, articles, or thing left with him, her, or his or her firm has been lost or stolen, to notify in writing the chief of police of the fact, giving the name of the person from whom he, she, or they received the same, the time when it was received, and of any other facts connected therewith, that may tend to the discovery or conviction of the thief or thieves.

"Sec. 11. No person or firm of persons, licensed as aforesaid, shall purchase or take any goods, articles, or thing offered him, her, or them from any person under the age of 16 years, or from any person who is at the time intoxicated, or from any person who is an habitual drunkard; nor, knowingly, take or purchase from any servant or apprentice any goods, article, or thing, without first ascertaining that such article or thing is the property of the person or persons offering to sell or pledge the same.

"Sec. 12. Any person or persons who shall violate any of the provisions or requirements of this ordinance, on conviction thereof, shall be punished by a fine of not less than five dollars nor more than fifty dollars, and costs of prosecution, or by imprisonment at hard labor in the common jail of the county of Kent, or in any penitentiary, jail, work-house, house of correction, or almshouse of said city, in the discretion of the court or magistrate before whom the conviction may be had, for a period of not less than five days nor more than ninety days. And

in case such court or magistrate shall only impose a fine and costs, the offender may be sentenced to be imprisoned at hard labor in the common jail of the county of Kent, or in any penitentiary, jail, work-house, house of correction, or almshouse of said city, until the payment of such fine and costs, for a period of not less than five days nor more than ninety days."

1. It is first insisted that this is a criminal case, that the action of the court amounted to an acquittal, and that the city is therefore remediless. This position cannot be maintained. There was no trial upon the merits. The court simply refused to proceed to trial, and quashed the proceedings, because it held the ordinance invalid. This Court has repeatedly issued the writ of *mandamus* to compel circuit and recorder's courts to proceed with the trial of criminal 'cases under similar circumstances. *People v. Swift*, 59 Mich. 529; *Sadler v. Sheahan*, 92 Id. 630. See, also, *Ware v. Circuit Judge*, 75 Mich. 488. While the writ of *mandamus* may be the more appropriate remedy, the same result is reached by the writ of *certiorari*, which has been held to be the proper remedy to review convictions for violations of city ordinances. *Swift v. Circuit Judges*, 64 Mich. 487; *People v. White*, 53 Id. 537.

2. It is next insisted that the ordinance is so unreasonable that it should be declared void. The charter expressly confers upon the common council the power to license and regulate pawnbrokers, junk dealers, and dealers in second-hand goods. Courts cannot interfere with legistive discretion, and are slow to declare ordinances invalid because unreasonable, when the power to legislate upon the subject has been conferred upon the common council. The council's discretion, and not the court's, must control. In such matters the city authorities are usually better judges than the courts.   *Fisher v. Harrisburg*, 2 Grant, Cas. 291; *Com. v. Robertson*, 5 Cush. 438; *St. Louis v. Weber*, 44 Mo. 547; 1 Dill. Mun. Corp. § 328.   "Regard must be had for all the circumstances of the particular city, the objects sought to be attained, and the necessity which exists for the ordinance."   Id. § 327.   It is common

knowledge that thieves resort to these places to dispose of their stolen goods, and that unscrupulous, and oftentimes criminal, persons are engaged in the business. The business, therefore, comes expressly within the control of the police power of the State, and is properly subject to reasonable rules and regulations. A very clear abuse of this power must be shown in order to justify the court in declaring the regulations to be unreasonable and void. While this business is legitimate in the absence of any statute law controlling it, no inalienable right exists to carry it on without complying with those provisions and restrictions which the legislative power of the State has seen fit to require.

This brings us to the provisions complained of. Neither the license fee of $25 or $50 nor the bond is unreasonable. This was decided in *Kitson v. Ann Arbor*, 26 Mich. 325. The license fee in that case was $100 for keeping a saloon or restaurant, and the bond $2,000. The defense was that, if it assumed to license the sale of intoxicating liquors, the ordinance was void under the Constitution, which prohibited their sale; and, if it involved the license of a restaurant, it was void, as unreasonable, and in restraint of trade. The ordinance did not provide for or authorize the sale of intoxicating liquors. It was insisted that a saloon was necessarily a place for the sale of such liquors. The Court held otherwise, and in illustrating the argument said:

"A pawnbroker might as well attempt to do business without a license by confining his dealings to stolen goods, or an auctioneer by making no legitimate sales, and holding none but Peter Funk auctions."

There is nothing unreasonable in requiring such persons to keep a record of their purchases, and to furnish a statement thereof to the police department. This provision is no more unreasonable, and certainly is as essential for the protection of society, as the law regulating druggists, which requires them to record in a book the names of all persons applying for intoxicating liquors, the date

of sale, the amount and kind of liquor sold, and the purpose for which the same was to be applied. Laws of 1887, Act No. 313, § 3.

The statutes of several states provide that, in order to obtain a license for the sale of intoxicating liquors, the application must be indorsed by a certain number of freeholders, certifying to the good character and reputation of the applicant. This is upon the theory that the state has the right to require that such business shall be carried on by reputable men, and not by the disreputable, vicious, and criminal classes. This provision has been universally sustained by the courts. The same principle applies to junk dealers and pawnbrokers, and we find nothing unreasonable in the requirement that the application to enter upon the business shall be indorsed by 12 freeholders.

We cannot hold unreasonable that provision prohibiting the licensee from purchasing from boys, intoxicated persons, or habitual drunkards. The reason for this provision is apparent, for it is well known that there are many young thieves in the large cities, who steal property, and resort to these places, ready to sell it for a mere nominal sum. It is also well known that habitual drunkards will use the same means to obtain money to satisfy their appetites for intoxicating liquors.

The only other provision we need to notice is that giving the power to revoke the license arbitrarily. It seems to be conceded by counsel for the city that the common council does not possess the right to revoke the license without cause shown. He says:

"It must be presumed that this right would be exercised only in cases of violation of the conditions of the ordinance, and after an investigation of such a charge; otherwise an action of the common council in assuming to so revoke arbitrarily could be restrained from doing injustice to the licensee."

No express power to revoke is conferred upon the council. In the investigation we have been able to make we

find but few authorities bearing upon the subject, and counsel in their briefs have cited none. We find two authorities sustaining this power. *Com. v. Kinsley,* 133 Mass. 579; *Martin v. State,* 23 Neb. 371. But in both these cases the express power to revoke was conferred upon the city by its charter. If no reservation of the right to revoke were reserved in the license, there would be little difficulty in reaching a conclusion. Has the common council the right to insist, as a condition precedent to the issue of the license, that the applicant shall agree that his license may be revoked at the will of the council? is the question presented. The necessity of a rigid control over this business in our large cities is clear. Convictions are difficult, though the public authorities may be well convinced that stolen goods are bought and sold at these places. The business is not necessary to the welfare of society or the public. The common council, with the knowledge of all the facts before them to a greater extent than courts can possibly have, have determined that it is well, in their judgment, to require these conditions. While the exercise of any arbitrary power may seem harsh, still we are of the opinion that this requirement is not so unreasonable as to require the courts to declare it void. Counsel for defendant cites and relies upon *Chaddock v. Day,* 75 Mich. 527; *Hughes v. Recorder's Court,* 75 Id. 574; *In re Frazee,* 63 Id. 396; *People v. Armstrong,* 73 Id. 288. An examination of these cases will show that in neither their facts nor principles are they like the case at bar. It is unnecessary for us to note the distinctions.

We hold the ordinance valid, and the order of the court below is reversed, and the court directed to proceed with the trial of the cause.

The other Justices concurred.